# EXHIBIT B



Dana Green
Vice President &
Assistant General Counsel

T 212 556 5290
Dana.green@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

December 15, 2024

**BY EMAIL**

Defense Counterintelligence and Security Agency
ATTN: FOIA Appellate Authority
P.O. Box 618
1137 Branchton Rd
Boyers, PA 16018
dcsa.quantico.hq.mbx.foia@mail.mil

**Re:    DCSA-B 24-13267 Privacy/FOIA Appeal**

Dear FOIA Appeals Officer:

I am legal counsel to The New York Times and its reporter Neil Bedi (together, "The Times"). On September 17, 2024, The Times submitted a Freedom of Information Act ("FOIA") request for a list of security clearances for Elon Musk, including the extent and purview of each of the clearances.

On October 2, 2024, the Defense Counterintelligence and Security Agency ("DCSA") responded, stating that it had identified two pages of records responsive to the request, within the Defense Investigation System for Security (DISS) system. However, citing FOIA exemptions (b)(6) and (B)(7)(C), DCSA denied all access to the records, asserting that "the information that you are seeking is privacy-related information pertaining to a third party and the privacy interest outweighs disclosure."

By this letter, The Times appeals that denial. As DCSA noted in its denial, public figures have a reduced privacy interest in public records. Unquestionably, Elon Musk is a public figure. He is also one of the most important government contractors to the United States, providing and controlling critical infrastructure and defense technology through SpaceX and Starlink. As one news outlet described it: "As the launch provider for sensitive Department of Defense missions, Musk has access to privileged information about the capabilities of spy satellites and other national

security assets. He also has critical contracts with the US military for Starlink communication services under the Starshield business unit."[1]

His control of such technology and services enables him to exercise substantial international geopolitical influence and makes him a target for foreign influence.[2] Since filing this request, it has been reported that Mr. Musk has secretly been in regular contact since 2022 with Vladimir Putin and other high-ranking Russian government officials.[3] Lawmakers and officials—including the administrator of NASA—have publicly raised concerns about whether Mr. Musk may be acting to the detriment of U.S national security. United States Senators specifically have raised concerns about the security clearances Mr. Musk holds and asked that the Department of Defense senior debarment official consider whether Mr. Musk should be excluded from government contracts.[4]

Finally, Mr. Musk is currently nominated to lead a new "Department of Government Efficiency" that will be empowered to scrutinize and challenge federal agency spending and "restructure Federal Agencies." In this position, he appears poised to exercise direct influence over government decision-making at the highest levels, including that of the Department of Defense.[5]

DCSA wrongly denied access to the records based on two exemptions: 5 U.S.C. § 552(b)(6) & (7)(C). Both exemptions require that the agency determine that disclosure would constitute an "unwarranted invasion of personal privacy." For disclosure to be "unwarranted," the government has the burden of showing that there is a privacy interest that outweighs the public interest in disclosure. *See, e.g.*, *WP Co. LLC v. SBA*, 502 F. Supp. 3d 1, 17 (D.D.C. 2020) (citations omitted).

The privacy interest is intended to "keep[] *personal* facts away from the public eye." *Assoc. Press v. DOD*, 554 F.3d 274, 286 (2d Cir. 2009)

---

[1] https://arstechnica.com/space/2024/10/why-is-elon-musk-talking-to-vladimir-putin-and-what-does-it-mean-for-spacex/.
[2] *See, e.g.*, https://www.nytimes.com/2024/10/30/us/politics/spacex-spy-satellites-elon-musk.html.
[3] https://www.wsj.com/world/russia/musk-putin-secret-conversations-37e1c187?mod=hp_lead_pos7.
[4] https://www.shaheen.senate.gov/imo/media/doc/241115lettertoigdoj.pdf.
[5] https://www.cnn.com/2024/11/12/politics/elon-musk-vivek-ramaswamy-department-of-government-efficiency-trump/index.html.

(emphasis added). To the extent that Mr. Musk can be considered to have any privacy interest in these records, it is *de minimis*. As courts repeatedly have found, security clearance information "only minimally implicates a 'personal privacy' interest." *WP Co. LLC v. United States DOD*, 626 F. Supp. 3d 69, 82 (D.D.C. 2022) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 408 (2011); *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980). Moreover, as that court noted, "it is difficult to conceive of how disclosure of one's security-clearance level would embarrass or invite unwarranted intrusions." *Id.*

In contrast, for the reasons set out above, the public interest in these records is overwhelming. Though not a government employee, Mr. Musk's ability to impact national security is equivalent to the most senior officials within government. The public has a direct and obvious interest in understanding what clearances DCSA has granted to him and exercising democratic oversight of the effectiveness of the DCSA vetting and oversight process. That substantial and urgent public interest in disclosure plainly outweighs the non-existent privacy interest in the records and we are confident that, if forced to litigate this request, a federal court would reach the same conclusion.

The Times asks that DCSA disclose the requested records. Thank you for your prompt attention to this matter.

Sincerely,

Dana R. Green
Vice President and Assistant General Counsel
The New York Times Company