UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK TIMES COMPANY and
NEIL BEDI,

                              Plaintiff,

          - versus –

DEFENSE COUNTERINTELLIGENCE
AND SECURITY AGENCY,

                             Defendant.

No. 25 Civ. 2333 (DLC)

---

### DECLARATION OF CHARLES D. WATTERS

      Pursuant to 28 U.S.C. § 1746, I, Charles D. Watters, hereby declare the following to be true and correct to the best of my knowledge:

      1.     Since October 2019, I have served as the Chief of the Defense Counterintelligence and Security Agency (DCSA), Privacy, Civil Liberties and Freedom of Information (PCLF) program. In this capacity, I monitor and advise staff assigned to three DCSA Freedom of Information Act and Privacy Office (FOI/P) components.

      2.     This declaration is submitted, in my official capacity as Chief of DCSA-PCLF, to support Defendant's Motion for Summary Judgment in the above captioned matter. The statements in this declaration are based upon my personal knowledge and upon my review of information available and accessed in performance of my assigned duties.

      3.     I am familiar with the Freedom of Information Act (FOIA) request made by the Plaintiffs, the New York Times and Neil Bedi (collectively "Plaintiffs"), on September 17, 2024, for a "list of security clearances for individual Elon Musk." This declaration addresses DCSA's October

1

2, 2024 response to that request and subsequent administrative appeals and decisions, including DCSA's withholding of information pursuant to FOIA exemptions 6 and (7)(C).

## DCSA RECORDS

4. DCSA is the largest background investigative service provider in the Federal government. DCSA regularly assists other government agencies in vetting job applicants and employees at those customer agencies to ensure the integrity and trustworthiness of the federal and contractor workforce, including adjudicating an applicant's or employee's eligibility to access classified information. In performing this core national security mission, DCSA maintains records created on subjects during the investigative, continuous vetting, and adjudicative process. As described in detail below, in response to the Plaintiffs' FOIA request seeking records identifying Mr. Musk's security clearances, DCSA searched databases that would store information compiled during assessment and vetting processes. Based on the type of records requested, and because Mr. Musk was never a DCSA employee, no systems other than those described below were identified as reasonably likely to maintain records responsive to the Plaintiffs' request.

### DCSA Search Action and Response

5. On September 17, 2024, Plaintiffs submitted a FOIA request to DCSA for a list of those security clearances granted to Elon Musk. DCSA received this request the same day and assigned tracking number: DCSA-B 24-13267.

6. In response to that request, a DCSA Government Information Specialist, familiar with the subject matter requested, initiated a search of the Defense Information System for Security (DISS). DISS is a software platform for all of DoD, and it helps manage personnel security, suitability and clearance management for DoD military and civilian employees and contractors. This platform provides secure communications between adjudicators, security officers, and components, allowing

users to identify, request and document personnel security actions. DISS is the authoritative record for the eligibility determinations made by DCSA and contains those records identifying Mr. Musk's security clearances that the Plaintiffs requested. Using personal identifiers, the assigned DCSA Government Information Specialist undertook a search in DISS reasonably calculated to locate responsive records, and that search of the DISS system yielded a single document of two (2) pages responsive to the Plaintiffs' request. This record consists of a list of any security clearances Mr. Musk possessed as of September 2024, when the DISS search was conducted (including any conditions or waivers attached).

7. On October 2, 2024, after the search was complete, DCSA responded to Plaintiffs' request. The agency's response noted that DCSA withheld two (2) pages, in their entirety, pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) and in accordance with DoD guidance (specifically, DoDM 5400.07, DoD Freedom of Information Act Program, dated January 25, 2017). DCSA response letter, dated October 2, 2024, is attached as Exhibit A to Plaintiffs' Complaint.

8. On December 15, 2024, Plaintiffs administratively appealed the DCSA response, noting Mr. Musk's high public profile and association to the then-incoming administration and asserting that the "substantial and urgent public interest in disclosure plainly outweighs the non-existent privacy interest" in a list of those clearances granted to him. DCSA denied the Plaintiffs' appeal by letter on January 27, 2025. On February 2, 2025, the Plaintiffs submitted a request for reconsideration, highlighting Mr. Musk's status as a special government employee within the Trump Administration. DCSA denied the reconsideration request by letter dated February 18, 2025.

**JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

FOIA EXEMPTIONS 6 and 7(C)

9. FOIA exemption (b)(6), 5 U.S.C. §552(b)(6), protects from release information about individuals when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Similarly, FOIA exemption 7(C), 5 U.S.C. §552(b)(7)(C), protects from release information contained in records compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

10. Records related to DCSA background investigations are compiled for law enforcement purposes, and therefore qualify for FOIA's exemption 7, because they are compiled to protect national security. A core function of the personnel vetting process is to prevent malign actors from obtaining security clearances, because allowing them access to classified information would risk security breaches undermining U.S. national security. For example, hostile actors might seek to disclose intelligence sources to an adversary or sell sensitive technology to the highest bidder. Furthermore, unauthorized disclosure of classified information may constitute a crime; proper background checks are intended in part to prevent such criminal disclosures. The background investigation process also considers, among other things, whether applicants have had any law enforcement issues in the past that could affect their ability to carry out a position or handle sensitive information. Thus, DCSA's records also contain law enforcement information about applicants' histories with law enforcement.

11. When considering whether exemptions 6 and 7(C) apply to specific information, DCSA-PCFL employs the applicable balancing tests for each exemption, carefully weighing the privacy interests of the individuals therein against the public's interest in the requested information.

12. **Privacy interest.** The record at issue here consists of a list of any security clearances Mr. Musk possessed as of September 2024, when the DISS search was conducted (including any conditions or waivers attached). Such a list of an individual's security clearances (including types and any conditions) is highly personal to the subject because it reflects on that individual's ability to

obtain such clearances after the review of a comprehensive background investigation or information received under DCSA's continuous evaluation program.

13. The DCSA adjudicative process—that is, DCSA's process for determining whether to grant, deny, or grant a clearance with conditions or a waiver—evaluates the "whole person" when determining if an individual is an acceptable security risk. DCSA's adjudication is structured by Security Executive Agent Directive 4 ("SEAD-4"), which applies to all executive branch agencies that adjudicate security clearances.[1] As the SEAD-4 explains, the "whole person" concept entails "an examination of a sufficient period and a careful weighing of a number of variables of an individual's life to make an affirmative determination that the individual is an acceptable security risk," and the agency should consider "[a]ll available, reliable information about the person, past and present, favorable and unfavorable." *Id*. Appx. A § 2(a).

14. To assess the whole person, the SEAD-4 lays out thirteen relevant topics: (1) A: Allegiance to the United States; (2) B: Foreign Influence; (3) C: Foreign Preference; (4) D: Sexual Behavior; (5) E: Personal Conduct; (6) F: Financial Considerations; (7) G: Alcohol Consumption; (8) H: Drug Involvement and Substance Misuse; (9) I: Psychological Conditions; (10) J: Criminal Conduct; (11) K: Handling Protected Information; (12) L: Outside Activities; (13) M: Use of Information Technology. *Id*. Appx. A § 2(c).

15. To begin DCSA's process to gather relevant information, the individual undergoing an investigation completes a Questionnaire for National Security Positions ("SF-86").[2] As the SF-86 states, the background investigation is designed to determine whether the investigated individual is "reliable, trustworthy, of good conduct and character, and loyal to" the United States. The applicant

---

[1] The SEAD-4 is available in its most recent form at https://www.dni.gov/files/NCSC/documents/Regulations/SEAD-4-Adjudicative-Guidelines-U.pdf.
[2] The SF-86 is publicly available online in its most recent form at https://www.opm.gov/forms/pdf_fill/sf86.pdf.

provides information on matters such as family circumstances and history, *id*. §§ 9, 10, 18; every place where the applicant has lived for the last ten years, *id*. § 11; education and employment history, *id*. §§ 12 & 13; foreign contacts and foreign travel, *id*. § 20; psychological and emotional health, *id*. § 21; police record, *id*. § 22; drug and alcohol use, *id*. §§ 23-24; and finances (including gambling history), *id*. § 26.  Once the completed SF-86 is submitted, the DCSA initiates a background invstigation on that individual gathering additional information on its which may include interviews with the subject's friends, family, and associates.  *See id*. at 1; *id*. § 16.

16. Although this FOIA request does not directly seek underlying investigative files, it is relevant to this case to explain the private information DCSA gathers during an investigation.  Most of the information is not generally public, and if disclosed, it could subject the applicant to embarrassment or harassment.  For example, information about health, or about alcohol and drug use, is personal and could be embarrassing to disclose.  Some of the information could also create security risks if disclosed—for example, financial information, or information on an individual's addresses and contacts.  In addition, the information gathered is extensive in both its temporal scope (covering many years) and its level of detail, which increases the subject's privacy interests and the security risks that disclosure could create.

17. For individuals who have already received a clearance, they are enrolled into a continuous evaluation program (also referred as "Trusted Workforce 2.0").  Under Trusted Workforce 2.0, DCSA receives and evaluates new relevant information about individuals with DCSA-authorized clearances to ensure they continue to meet clearance requirements and should continue to hold positions of trust.

18. The specific type of record at issue here—which includes a list of any security clearances Mr. Musk possessed as of September 2024, when the DISS search was conducted

(including any conditions or waivers attached)—carries a significant privacy interest, for several reasons.

19. At a high level, the ability (or inability) to obtain clearances reflects the government's judgment of an applicant's reliability and trustworthiness to possess and maintain access to national security information. Adjudications are based on the deeply personal information described above. Revealing whether DCSA granted or denied clearances (or granted them with conditions or a waiver) would shed light on this private information and would invite speculation about the more detailed contents of DCSA's investigation.

20. For example, if an individual is in a government or contractor position where obtaining a security clearance would be common or necessary, disclosing that the individual lacked a clearance would indicate that DCSA had likely denied an application or revoked access. The decision to deny or revoke access would reveal that the agency's investigation (or continuous evaluation) had uncovered derogatory information, and that the information was of sufficient weight when considered alongside other information that a denial or revocation was warranted. Thus, disclosing that an individual lacked a clearance would invite speculation about the nature of the derogatory information and DCSA's reason for denial or revocation, and would draw unwanted public attention.

21. To take another example, DCSA may determine, based on information obtained during an investigation, that a person should be eligible for a certain type of security clearance only with certain conditions attached. An individual might be required to regularly submit financial statements to mitigate concerns about their finances; or might be required to attend counseling sessions about a specific issue; or might have restrictions on access to certain types of information (for example, information related to a specific foreign country where the individual had a close familial or other connection). *See* SEAD-4 Appx. C. Revealing these conditions, or even the fact that the grant was

conditional, would reveal private information and invite speculation about the reasons for the imposition of the conditions.

22. And as another example, DCSA may determine that a grant is appropriate but only with a waiver of otherwise-applicable conditions. The SEAD-4 describes a waiver as:

> Eligibility granted or continued despite the presence of substantial issue information that would normally preclude eligibility. Approval authorities may approve a waiver only when the benefit of initial or continued eligibility clearly outweighs any security concerns. A waiver may also require conditions for eligibility as described below.

*Id*. Appx. C. Revealing that a person obtained a clearance but with a waiver would reveal that the investigation had found "substantial issue information that would normally preclude eligibility." This, too, would invite speculation and unwanted attention.

23. For all these reasons, when DCSA receives a FOIA request from a third party for information concerning the status and types of security clearances granted to that individual, it is DCSA's regular practice and policy to withhold such information on privacy grounds. It is insufficient to protect individual privacy for DCSA to withhold only information that clearly shows the presence of derogatory information, such as grants with conditions or waivers. If DCSA withheld only that information, but disclosed information showing simple grants of clearances, FOIA requesters could determine based on the withholding decision whether a given individual's records contained derogatory information. In this way, DCSA's policy is akin to a Glomar response.

24. **Public interest.** Balanced against these significant privacy interests is any potential cognizable public interest in the information. DCSA judged that the qualifying public interest under FOIA, the extent to which the information sheds light on the operations of government, was relatively small, and certainly did not outweigh the significant privacy interests therein.

25. For purposes of these exemptions, a cognizable public interest exists only when information about an individual's security clearances (if any) would shed light on DCSA's

performance of its mission, which is to conduct background investigations and adjudicate applications for federal security clearances.

26.     First, disclosing the list of security clearances that one individual has received would show very little about DCSA's performance of its official duties.  The withheld information is only a final list of clearances as of the date DISS was queried and does not include the voluminous information on which any adjudications were based (that is, the detailed personal records described at length above).  Disclosing the withheld information would not give any meaningful insight into matters such as the thoroughness of DCSA's investigation, the fairness and accuracy of its adjudication, or its response to any new information.

27.     Second, the withheld information relates to the security clearances of a person who was, at the time of the record, a private individual, not a government employee.  The withheld information dates to September 2024, before the presidential election and Mr. Musk's change in status to a special government employee (SGE).  At the time the records at issue were gathered, Mr. Musk was a government contractor (in his capacity as CEO of SpaceX) and had no employee role.

28.     In its administrative appeal, The Times argued that there was a public interest in disclosure because Mr. Musk is "one of the most important government contractors in the United States, providing and controlling critical infrastructure and defense technology through SpaceX and Starlink." *See* Administrative Appeal (ECF No. 2-1) at 1.  It further argued that Mr. Musk's corporate roles provide him access to information about spy satellites and other national security assets; grant him significant geopolitical influence; and could make him the subject of foreign influence efforts. *Id*. at 1-2.  Whatever the qualifying public interest in each of these topics, the withheld information would add little to the public's understanding of them.  Disclosing a list of Mr. Musk's security clearances would not reveal what information (if any) Mr. Musk has accessed, or reveal anything

9

about his geopolitical influence or any foreign efforts to influence him.

29. When seeking reconsideration, The Times also argued that Mr. Musk's later status as an SGE tipped the balance toward disclosure. *See* Administrative Reconsideration Request (Feb. 5, 2025), ECF No. 1-4. Specifically, The Times argued, without citation, that Mr. Musk had "access[ed] highly sensitive and classified government records and systems," and that "[t]he public has an obvious interest in understanding what clearances DCSA has granted to him and exercising democratic oversight of the effectiveness of the DCSA vetting and oversight process." *Id*. at 2. But the records at issue were generated in late September of 2024, before the change in Mr. Musk's role. In addition, speculation about what information Mr. Musk may have accessed does not constitute a qualifying public interest. The Times has not pointed to any evidence of government misconduct that could support a cognizable public interest.

30. In sum, any public interest in the records is minimal, at best, and does not outweigh Mr. Musk's privacy interests in the withheld information. The probative value of releasing the clearances that Mr. Musk may have been granted or denied as a contractor would shed little or no light on DCSA's core operations and execution of its statutory duties, or upon Mr. Musk's duties as a SGE. Because release of Mr. Musk's personal clearance information does not support the primary purpose of the FOIA and does not outweigh the significant privacy interests he retains therein, even if he is temporarily serving as a SGE, disclosure would constitute a clearly unwarranted invasion of his personal privacy, or at a minimum, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and the information must be withheld from disclosure under exemptions 6 and 7(C).

## FORSEEABLE HARM ANALYSIS

31. DCSA-PCLF conducted the requisite foreseeable harm analysis under the FOIA and

determined that disclosure of the requested records would foreseeably harm the interests protected by exemptions 6 and 7(C), by causing an unwarranted invasion of personal privacy of the type which FOIA exemptions (b)(6) and (b)(7)(C) exist to prevent.

### SEGREGATION OF NON-EXEMPT INFORMATION

32.     DCSA conducted a page-by-page and line-by-line review of the records located in response to the Plaintiff's request addressed in this Declaration for reasonable segregation of non-exempt information. No segregation of meaningful information in the redacted material can be made without disclosing information entitled to protection under the FOIA and the Privacy Act.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Charles D. Watters

Executed on this 29th day of May, 2025