# **EXHIBIT 26**



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
1137 BRANCHTON ROAD
BOYERS, PA  16018-0618

January 27, 2025

Ms. Dana R. Green
Vice President and Assistant General Counsel
The New York Times Company
620 8th Avenue
New York, NY 10018

**Re: Freedom of Information Act Appeal of DCSA-B 24-13267 (APP25-00016)**

Dear Ms. Green:

The Defense Counterintelligence and Security Agency (DCSA) received your appeal on behalf of The New York Times and its reporter Neil Bedi ("The Times").  Your appeal was assigned tracking number APP25-00016.  Upon further review, the decision of the DCSA FOIA and Privacy Office for Investigations (FOI/P) is affirmed.

On September 17, 2024, Mr. Bedi submitted a Freedom of Information (FOIA) request to FOI/P seeking:

1) A list of security clearances for Elon Musk.

2) Any details about the extent and purview of each of the clearances.

The FOI/P responded to Mr. Bedi's request on October 2, 2024, identifying two (2) pages responsive to his request and withheld all information in full pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

On appeal, you assert that the DCSA wrongly denied The Times access to these records as information pertaining to an individual's security clearance only minimally implicates a "personal privacy" interest and would be unlikely to lead to "embarrass[ment] or unwarranted intrusions." *WP Co. LLC v. U.S. Department of Defense*, 626 F.Supp 3.d 69, 82 (D.D.C 2022). You further assert that as such, Mr. Musk's interest in the confidentiality of this information is *de miminis* when balanced against the overwhelming public interest in these records.  You cite Mr. Musk's position as a government contractor, his relationships with foreign leaders and affiliation with senior government officials in support of this assertion.

Individuals who require initial or continued eligibility for access to classified information, or eligibility to hold a sensitive position, must adhere to National Security Adjudicative Guidelines as detailed in the Security Executie Agenty Directive 4 (SEAD-4).  These guidelines apply to all U.S. Government civilian and military personnel, consultants, contractors, licensees, certificate holders or grantees and their employees, and the Executive Branch Agencies apply these guidelines when rendering any final national security eligibility determination.  The adjudicative

process itself is an examination of a sufficient time period and a number of variables of an individual's life in order to make a determination as to whether granting an individual a security clearance, and thereby access to classified information, is an acceptable security risk. This is known as the "whole person" concept. For additional information on the adjudicative process, you may wish to visit our website, https://www.dcsa.mil/Personnel-Security/Adjudications/.

To ensure a fully considered decision of your appeal, DCSA is applying a "de novo" standard of review to the arguments raised and the actions of the FOI/P, as U.S. district courts review FOIA decisions under this "de novo" standard of review. *See* 5 U.S.C § 552(a)(4)(B).

## FOIA Exemptions B6 & B7C

Exemption (b)(6) protects information in personnel and similar files when the release of such information "*would constitute a clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552 (b)(6) (2000) (*emphasis added*). More broadly, FOIA exemption (b)(7)(C) protects from release information compiled for law enforcement purposes that "*could reasonably be expected to constitute* an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C) (*emphasis added*). A balancing test has traditionally been undertaken when determining the applicability of both exemptions to the records requested, balancing the privacy interests of the individuals named therein against the public's interest in the requested information. *Wood v. FBI, 432 F.3d 78, 87 (2d Cir. 2005)*. As noted, exemption (b)(7)(C)'s privacy language is broader than the comparable language in exemption (b)(6) in two respects: first while exemption (b)(6) requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from exemption (b)(7)(C); second, while exemption (b)(6) refers to disclosures that "would constitute" an invasion of privacy, exemption exemption (b)(7)(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. *Department of Justice v. Reporters Committee for Freedom of Press, 489 U.S. 749, 756 (1989).* It is well established that DCSA personnel vetting records are compiled for "law enforcement purposes" and fall within the ambit of FOIA exemption (b)(7). *Mittleman v. Office of Personnel Management,* 76 F.3d 1240, 1243 (D.C. Cir. 1999) (per curiam).

### Personal Privacy Interests

In defining what might be considered of a "personal" interest, the Court noted "at its most basic level . . . ["personal"] simply means 'of or pertaining to a particular person.'" *Federal Communications Commission v. AT&T Inc.,* 562 U.S. 397, 404 (2011) (citing Webster's New International Dictionary 1828 (2d ed.1954)). That personal information in question need "not be embarrassing or of an intimate nature" to afford protestation. *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). In *Department of Justice v. Reporters Committee for Freedom of the Press,* a seminal case examining the application of FOIA exemption (b)(7)(C), the Court notes that "privacy encompass[es] the individual's control of information concerning his or her person." 489 U.S. 749, 763 (1989). The broader language within (b)(7)(C), as detailed above, creates a "standard for evaluating a threatened invasion of [personal] privacy interest resulting from the disclosure of records compiled for law enforcement purposes [that] is somewhat broader than the standard applicable to [other files]." *Id.* at *757, 763*. Furthermore, in *Reporters Committee,* the Court concluded that "it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen." Id at 774-75, 780. Finally, it is well settled that public speculation and media notierity "[does

not] vitiate the FOIA privacy exemption for official information [on that topic]." *Best v. U.S. Dept. of Justice,* 665 F.2d 1251, 155 (D.D.C 1981).

## Public Interests

Once identified, the privacy interests of the individual must be balanced with the public's interest in the information requested. *Wood* at *87.* In *Department of the Air Force v. Rose,* the Court recognized that "the basic purpose of the [FOIA is] to open agency action to the light of public scrutiny." *425 U.S. 352, 372 (1976).* In *Rose,* the Court found that summaries of disciplinary hearings at the United States Air Force Academy were releasable, after redacting the personal information of the cadets therein, as they shed light on the Academy's administration of its Honor Code. *Id.* The Court noted that in *Rose* "[i]f, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about persons to whom those files related, the public interest that supported the decision in *Rose* would have been inapplicable." *Reporters* at 775. Finally, in affirming FBI's denial of a request for the "rap-sheet" maintained on an officer of a company awarded a DoD contract, the Court in *Reporters* held that although this information would likely be of public interest, it would do little to shed light on the operations of the government; however, a request for information pertaining to "the [Department's] procedures, if any, for determining whether offices of a prospective contractor have criminal records, would constitute . . . [a request for] 'official information'" shedding light on the agency's procedures for awarding government contracts. *Id.*

The United States District Court for the District of Columbia has applied these cases to support the withholding of investigative records held by DCSA's predecessor agency, the Defense Investigative Service (DIS). In *The Nation Magazine v. Department of State, 1995 WL 17660254,* the court held that DIS properly withheld records concerning then-presidential candidate Ross Perot under exemptions (b)(6) and (b)(7)(C) because "the disclosure of specific information contained in the DIS investigative files [would not] tell us anything more about the operations of the DIS. While this information might be 'of interest' to the public, it is not in the 'public interest' protected by FOIA." *The Nation Mag. v. Dep't of State*, No. CIV.A.92-2303(JHG), 1995 WL 17660254, at *10 (D.D.C. Aug. 18, 1995), amended (Oct. 7, 1996). (*quoting Reporters Comm., 489 U.S. at 774-755*).

## ANALYSIS

### BALANCING TEST – LACK OF PUBLIC INTERESTS

In balancing the public's interest in the contents of Mr. Musk's adjudicative file against his privacy interests therein, it must be noted that his public stature, and any associated notierity, does not in any way diminish his privacy interests in the contents of that file. While Mr. Musk maintains a high profile as a government contractor and purported consultant to the incoming administration, unlike the military officers in *WP Co. LLC v. U.S. Department of Defense,* he is still a private citizen. As the Court noted in *Reporters Committee,* "it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen." *Reporters* at 774-75, 780. While Mr. Musk's adjudicative file listing those clearances he might have been granted may be of general interest to the public, this information would do little to shed light on DCSA's performance of its statutory mandate. *Nationl Mag.* at 10. Therefore, I find that neither Mr. Musk's notoriety, nor those factors you raise on appeal as the public interest

justification for releasing this information, necessitate disclosure of the records sought under 5 U.S.C. § 552 (b)(6).

Finally, while I conclude that the facts of this matter are distinguishable from *WP Co.* and support the application of Exemption (b)(6), I also determine at a minimum the release of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *WP Co.* at 82.; 5 U.S.C. § 552 (b)(7)(C). As mentioned above, any determination to grant a security clearance is made after a thorough examination of that individual's life though the investigative process to ascertain if that individual is an acceptable security risk. If an individual was not granted a security clearance, or if the individual is granted a clearance and subsequently had that clearance revoked, releasing information of the type you requested would essentially illustrate that indivdual's ongoing fitness to maintain such a clearance. It is reasonable to find such insight could constitute an unwarranted invasion of personal privacy.

## Segregable Information

To reiterate, Mr. Musk retains a significant privacy interest in the contents of his adjudicative file. The clearances he may have been granted would do little to contribute to the understanding of DCSA or its operations. *Reporters, at 775.*

Nevertheless, agencies should be mindful that "[t]he focus of the FOIA is information, not documents," and that as a rule, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). In *Yeager v. DEA*, the court determined this standard should be met by the extent of "burden" in segregating nonexempt material. 678 F.2d 315, 322 n.16 (D.C. Cir. 1978). Finally, the agency's primary consideration should be "information of value" *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981).

The nonexempt information is so minimal that the release of such information would not provide any probative value or insight as to DCSA's functions. For the above reasons, the FOI/P's application of FOIA exemptions (b)(6) and (b)(7)(C) is affirmed.

## Foreseeable Harm

The "foreseeable harm" standard, as codified in the FOIA Improvement Act of 2016, mandates that an agency only withhold information if it "reasonably foresees that disclosure would harm an interest protected by an exemption" or "if disclosure is prohibited by law . . . ." *FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)).*

While the application of certain FOIA exemptions may necessitate a separate robust articulation of the "foreseeable harm" that might be caused through the release of certain records (e.g, ex. (b)(2), (b)(5), (b)(8) and (b)(9)), FOIA exemptions (b)(6) and (b)(7)(C) contain statutory language [i.e., the "invasion of personal privacy"] demonstrating that a "foreseeable harm" analysis is implicit in their application. As such, when applying FOIA exemptions (b)(6) and (b)(7)(C), a short statement acknowledging the "foreseeable harm" analysis has been conducted will typically suffice. A review of the FOI/P's October 2, 2024, letter to Mr. Bedi indicates that a "foreseeable harm" analysis was conducted by the FOI/P, satisfying the agency's obligation under the *FOIA Improvement Act of 2016*. Consistent with OIP guidance, the interests which lie within the two (2) pages are personal in nature and the release of that information would likely

violate Elon Musk's privacy interests, thereby creating a "foreseeable harm" of the type FOIA exemptions (b)(6) and (b)(7)(C) are intended to prevent.

The Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation.  You may contact OGIS in any of the following ways, or refer to their website: https://www.archives.gov/ogis.

| | |
|---|---|
| U.S. National Archives and Records Administration | Phone: 202-741-5770 |
| Office of Government Information Services | Toll-Free: 1-877-684-6448 |
| 8601 Adelphi Road - OGIS | Fax: 202-741-5769 |
| College Park, MD 20740-6001 | Email: ogis@nara.gov |

This is the DCSA's final determination with respect to your FOIA Act request.  Pursuant to 5 U.S.C. § 552 (a)(4)(B), you may seek judicial review of this determination in the district court of the United States in the district (1) in which he resides; (2) in which he maintains his principal place of business; (3) where the disputed agency records are maintained; or (4) in the U.S. District Court for Washington, D.C.

Sincerely,

Charles D. Watters
Chief
Privacy, Civil Liberties and
Freedom of Information