**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE NEW YORK TIMES COMPANY and NEIL BEDI,

Plaintiffs,

v.

UNITED STATES DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY,

Defendant.

25 Civ. 2333 (DLC)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

**CONTENTS**

ARGUMENT ..... 1

I. The Government Has Established that the Record Was Compiled for Law Enforcement Purposes ..... 1

II. The Analysis of the Privacy Exemptions Properly Takes Into Account the Timeframe When the Withheld Record Was Processed ..... 3

III. The Withheld Record Carries a Substantial Privacy Interest ..... 4

A. FOIA Only Requires a More than Minimal Privacy Interest ..... 5

B. Plaintiffs' Citations to Public Statements Do Not Eliminate Privacy Interests In the Withheld Record ..... 6

IV. It Is Not Possible to Redact Any Potential Waivers or Conditions ..... 9

V. The Government Has Met the Foreseeable Harm Requirement ..... 10

CONCLUSION ..... 13

CERTIFICATE OF COMPLIANCE ..... 14

**AUTHORITIES**

Page(s)

Cases

*Associated Press v. DOD*,
554 F.3d 274 (2d Cir. 2009)........................................ 7
*Bonner v. U.S. Dep't of State*,
928 F.2d 1148 (D.C. Cir. 1991) ........................................ 5
*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. DHS*,
331 F. Supp. 3d 74 (S.D.N.Y. 2018)........................................ 1
*Comm. for Freedom of the Press v. CBP*,
567 F. Supp. 3d 97 (D.D.C. 2021) ........................................ 15
*Dep't of State v. Washington Post Co.*,
456 U.S. 595 (1982)........................................ 8
*Dep't of the Navy v. Egan*,
484 U.S. 518 (1988)........................................ 7, 9
*,Groenendal v. EOUSA,* 20-CV-1030 (DLF),
2024 WL 1299333 (D.D.C. Mar. 27, 2024)........................................ 16
*Jamil v. Sec'y, Dep't of Def.*,
910 F.2d 1203 (4th Cir. 1990) ........................................ 6
*Jefferson v. DOJ, Off. of Pro. Resp.*,
284 F.3d 172 (D.C. Cir. 2002) ........................................ 2
*Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*,
30 F.4th 318 (2d Cir. 2022) ........................................ 3
*Leopold v. DOJ*,
94 F.4th 33 (D.C. Cir. 2024) ........................................ 16
*Milner v. Dep't of Navy*,
562 U.S. 562 (2011)........................................ 3
*N.Y. Times Co. v. DOJ*,
756 F.3d 100 (2d Cir. 2014)........................................ 5
*Nation Mag. v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) ........................................ 10, 11
*Nation Mag. v. U.S. Customs Serv.*,
937 F. Supp. 39 (D.D.C. 1996) ........................................ 12
*People for the Am. Way Found. v. Nat'l Park Serv.*,
503 F. Supp. 2d 284 (D.D.C. 2007) ........................................ 8
*Peter B. v. C.I.A.*,
620 F. Supp. 2d 58 (D.D.C. 2009) ........................................ 7
*Pub. Invs. Arb. Bar Ass'n v. SEC*,
771 F.3d 1 (D.C. Cir. 2014)........................................ 17

*Radar Online LLC v. FBI*,
692 F. Supp. 3d 318 (S.D.N.Y. 2023)....................................................................... 13
*Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ....................................................................................... 15, 16
*Seife v. FDA*,
43 F.4th 231 (2d Cir. 2022) ........................................................................................ 15
*Stehney v. Perry*,
907 F. Supp. 806 (D.N.J. 1995) ..................................................................................... 6
*Washington v. U.S. Dep't of Just.*,
746 F.3d 1082 (D.C. Cir. 2014) ........................................................................ 10, 12, 13

Statutes

5 U.S.C. § 552(a)(8).......................................................................................................... 15
5 U.S.C. § 552(b)(7) ........................................................................................................... 3
5 U.S.C. § 552(b)(7)(A)....................................................................................................... 3
5 U.S.C. § 552(b)(8) .......................................................................................................... 16

The government submits this brief in opposition to plaintiffs' cross-motion for summary judgment, ECF No. 14 ("Pl. Br."), and in further support of its own motion, ECF No. 12 ("Govt. Br.").

## ARGUMENT

### I. The Government Has Established that the Record Was Compiled for Law Enforcement Purposes

Contrary to plaintiffs' argument, Pl. Br. 16-18, the government has shown that the two-page record reflecting any security clearances Mr. Musk held as of September 2024 was compiled for law enforcement purposes, and therefore meets the threshold requirement of FOIA exemption 7(C).

As the government's opening brief noted, Govt. Br. 7, the government can meet the law enforcement purposes threshold for exemption 7 by establishing "a rational nexus between the agency's activity in compiling the documents and its law enforcement duties." *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. DHS*, 331 F. Supp. 3d 74, 97 (S.D.N.Y. 2018). Maintaining national security and preventing potential violations of the law qualify as law enforcement. *Id*.

To be sure, a list of an individual's security clearances is distinct from an underlying investigative file. Pl. Br. 17-18. But the record here was pulled from a database, DISS, whose purpose is to permit federal agencies to securely communicate about the clearances individuals possess, so that they can confirm whether individuals are authorized to access certain information. Second Declaration of Charles D. Watters ("Second Watters Decl.") ¶ 4. Permitting only appropriately vetted and cleared individuals to access classified information helps to avoid national security harms and potentially criminal unauthorized disclosures of that information, which are law enforcement purposes. *Id*. ¶ 5. DISS fulfills the requirements of several executive orders and

DOD policies that govern national security information, and lay out various requirements for systems to control access to such information; compliance with these procedures (including enforcement if necessary) is also a law enforcement purpose. *Id*. ¶¶ 6-7.

Plaintiffs' analogizing a list of clearances to a generic HR file thus misses the larger context in which clearances are gathered: DCSA must maintain an accurate, current database of clearances to ensure that authorized individuals may access information as appropriate, and unauthorized individuals may not. *Id*. ¶¶ 4-5. For example, if the Air Force needs to know whether a specific government contractor is authorized to access specific technical details about the design of a new military aircraft, it must be able to quickly, securely, and accurately obtain that information from DCSA. *Id*. ¶ 8. This is the "role" that the official list of an individual's clearances "would play in preventing a security breach," Pl. Br. 18, and is a critical aspect of DCSA's law enforcement duties.

Plaintiffs' argument that the government must identify an "enforcement proceeding" to which the withheld record relates misapprehends the D.C. Circuit's explanation of the exemption 7 threshold. Pl. Br. 18 (citing *Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 177 (D.C. Cir. 2002)). The question is not whether there is a "proceeding"—a word the statute does not use in outlining the threshold standard, *see* 5 U.S.C. § 552(b)(7)[1]—but whether the activity in question can be fairly viewed as "law enforcement." As Justice Alito's concurrence in *Milner v. Dep't of Navy*, 562 U.S. 562, 583 (2011) notes, efforts to proactively prevent violations of the law and maintain security fall within an ordinary understanding of "law enforcement." The Second Circuit has expressly adopted this view. *Knight First Amend. Inst. at Columbia Univ. v. United States*

[1] The word "proceedings" is used only in the specific statutory standard for exemption 7(A), which protects from disclosure records compiled for law enforcement purposes that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

*Citizenship & Immigr. Servs.*, 30 F.4th 318, 328 (2d Cir. 2022) (adopting *Milner* concurrence).[2] Neither the visa processing standards the Second Circuit considered in *Knight* nor the counterterrorism and crime-prevention efforts that Justice Alito considered in *Milner* necessarily lead to any sort of enforcement *proceeding*. So too here: maintaining a list of individuals' security clearances for agencies to access helps ensure that national security is protected and unauthorized disclosures are avoided.

## II. The Analysis of the Privacy Exemptions Properly Takes Into Account the Timeframe When the Withheld Record Was Processed

Contrary to plaintiffs' argument and factual presentation, which relies substantially on events that postdate DCSA's search and production, it is both substantively and procedurally appropriate for this Court to focus its analysis of the asserted exemptions on the September 2024 timeframe when the agency made its exemption decision.

First, as a matter of substance, the record at issue here is "a list of any security clearances Mr. Musk possessed as of September 2024, when the DISS search was conducted (including any conditions or waivers attached)." Declaration of Charles Watters ¶ 12, ECF No. 11 ("First Watters Decl."). Plaintiffs argue that this record will answer questions about Mr. Musk's clearance status when he was a government employee, which occurred months later. *E.g.*, Pl. Br. 16, 19. But the record cannot definitely address those questions given the temporal gap.

Second, as plaintiffs concede, focusing on September 2024 is also consistent with the general procedural rule, which is that a court evaluates an asserted FOIA exemption "as of the time

[2] The government does not read *Jefferson* or other D.C. Circuit case law to require identification of a specific "law enforcement *proceeding*," but rather to focus on whether the activity in question could plausibly constitute "law enforcement." But to the extent plaintiffs argue, or previous D.C. Circuit case law held, that a particular "proceeding" is necessary, that standard cannot apply in this case following the Second Circuit's decision in *Knight*, which expressly adopted the flexible standard of Justice Alito's concurrence in *Milner*.

it was made [by the agency] and not at the time of a court's review." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 110 n.9 (2d Cir. 2014); Pl. Br. 15. This principle is motivated by a desire to avoid piecemeal litigation and the possibility of an ever-shifting record. As the D.C. Circuit put it, "to require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991). DCSA responded to plaintiffs' request promptly—it searched for the record and completed its response within about two weeks. First Watters Decl. ¶¶ 5-7. This Court should review that decision based on the record DCSA had before it.

While courts may depart from the general rule, Pl. Br. 15-16, this case does not present facts warranting a departure. For example, in the *Times* case, the Second Circuit determined that "ongoing disclosures by the Government made in the midst of FOIA litigation" should be considered, even though they postdated the district court's decision, because they went "to the heart of the contested issue," *i.e.*, whether there had been an official government acknowledgment of withheld information. 756 F.3d at 110 n.9 (quotation marks omitted). This case is different. There have been no ongoing disclosures by the Government, and the contested issue is whether the public's legitimate interest in understanding government action—namely, any DCSA decision as of September 2024 to grant a security clearance—outweighs the relevant individual privacy interest in the withheld record.

## III. The Withheld Record Carries a Substantial Privacy Interest

To support their argument that an individual's list of security clearances (including, potentially, applicable conditions or waivers relating to any clearances) carries only a minimal privacy interest, plaintiffs cite inapposite case law, misread the government's declaration, and seek to rely on public statements that do not address all of the agency's privacy interests.

**A. FOIA Only Requires a More than Minimal Privacy Interest**

First, Plaintiffs' argument relies on a misconception of FOIA's legal standard for privacy interests.

First, plaintiffs cite a series of cases rejecting various attempts to sue the government for denials of a security clearance to claim that there is no privacy interest in a person's clearance status. Pl. Br. 23-24. But the cited cases involve entirely unrelated legal questions and standards. It is both true and irrelevant to this case that the denial of a clearance does not implicate a protected liberty or property interest entitling the individual to sue, *Jamil v. Sec'y, Dep't of Def.*, 910 F.2d 1203, 1209 (4th Cir. 1990), and *Stehney v. Perry*, 907 F. Supp. 806, 821 (D.N.J. 1995); that denial of a clearance does not constitute an adverse employment action permitting Merit Systems Protection Board review, *Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988); and that a public statement noting a person's ineligibility for a clearance is not defamatory, *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 72 (D.D.C. 2009). None of these cases engage with the question of *privacy*: does an individual have a more-than-minimal interest in keeping the results of any security clearance investigation private? As Mr. Watters' first declaration explains, the answer is yes. *See* First Watters Decl. ¶¶ 19-23.

FOIA's privacy exemptions attach to information that carries a substantial privacy interest—that is, any information involving a privacy interest that is more than de minimis. *Associated Press v. DOD*, 554 F.3d 274, 286 (2d Cir. 2009). Congress intended the privacy exemptions' language to have "a broad, rather than a narrow, meaning," and their sweep is not limited to "highly personal" types of information. *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982). Even quotidian information like phone numbers and addresses has been repeatedly held to meet this standard. *See id.* (determining that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data . . . would be

exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304, 306 (D.D.C. 2007) (noting that "[f]ederal courts have previously recognized a privacy interest in a person's name and address," and concluding that "[g]enerally, there is a stronger case to be made for the applicability of Exemption 6 to phone numbers and addresses"). As the government's declaration explains, disclosing an individual's list of security clearances would reveal whether the individual was denied a clearance and would show any conditions or waivers attached, each of which carries a substantial privacy interest. Watters Decl. ¶¶ 19-23. Thus, it is irrelevant that a government disclosure that an individual had been denied a clearance would not constitute defamation, Pl. Br. 23—neither would disclosure of a phone number or address, but all of this information carries a substantial privacy interest.

For similar reasons, plaintiffs' suggestion that there is no substantial privacy interest because the denial of a clearance does not "inherently reflect any personal failing or wrongdoing," grapples with the wrong question. Pl. Br. 25. Plaintiffs' citation to *Egan* proves the point: having dual citizenship, foreign business connections, or "'close relatives residing in a country hostile to the United States'" may not "inherently reflect wrongdoing," but such information could still plausibly be private information that the applicant would not want disclosed. Pl. Br. 25 (quoting *Egan*, 484 U.S. at 528-29).

**B. Plaintiffs' Citations to Public Statements Do Not Eliminate Privacy Interests In the Withheld Record**

Plaintiffs also argue that any privacy interest in the withheld record is undercut by public statements reported to have been made by government officials and Mr. Musk, Pl. Br. 25, but those statements do not eliminate protected privacy interests in the record.

Plaintiffs are broadly correct that, under certain circumstances, an individual may diminish

or even waive an otherwise-valid privacy interest in information about himself by making public statements. Pl. Br. 25; *see, e.g.*, *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (political candidate waived high-level privacy interest in association with law enforcement by publicly discussing a proposal to aid law enforcement); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) ("*CREW*") (elected official's disclosure that he had been investigated diminished his privacy interest in the fact of the investigation, but not its contents). Under this standard, Mr. Musk's public statements may be relevant to the Court's analysis of privacy interests, including specifically any interest in the disclosure of whether he held a security clearance as of September 2024.[3]

However, here, because the purported statements by Mr. Musk do not address all of the information the government has withheld as exempt (including any possible conditions or waivers on any security clearances)—and because, as explained below, it would not be possible to redact only information regarding any conditions or waivers—these remarks do not provide a basis for disclosing the record at issue.

The case law demonstrates that the specifics of the public statement, and their relationship to the particular withheld information, matter in a determination about applicable privacy exemptions. For example, in *Nation Magazine*, then-presidential candidate Ross Perot had publicly spoken about a proposal for him to privately aid the Customs Service's drug interdiction efforts. 71 F.3d at 896. The D.C. Circuit held that this public disclosure rendered a privacy-based Glomar

---

[3] In addition, as Mr. Watters notes, DCSA has a procedure for individuals to provide privacy waivers that permit disclosure of information otherwise protected by FOIA or the Privacy Act. Second Watters Decl. ¶ 10. A series of purported public remarks does not meet the agency's standards, just as an individual who speaks publicly about taxable income does not waive privacy interests, and allow an agency to unilaterally release, government income tax records. *Id.* As Mr. Watters also previously noted, it is DCSA's practice to withhold information about individual security clearances in response to third-party requests. First Watters Decl. ¶ 23.

response unjustified: a government disclosure that it had files relating to this offer would not reveal anything that Perot himself had not. *See id.* & n.10. But the court did not hold that wholesale disclosure of any Customs Service files was appropriate; instead, it remanded for further proceedings to conduct a more complete search, and to account for Perot's statements in any evaluation of privacy exemptions. *Id.* As a result, on remand, the district court upheld the government's assertion of a narrower privacy-based Glomar response refusing to confirm or deny whether it held records that would reveal "whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation." *Nation Mag. v. U.S. Customs Serv.*, 937 F. Supp. 39, 45 (D.D.C. 1996).

Likewise, in *CREW*, former Representative Tom DeLay had publicly disclosed both that he had been previously investigated by the FBI, and that the investigation had closed without charges. 746 F.3d at 1082. Ordinarily, the FBI does not confirm or deny whether it has investigated individuals, because there is typically a substantial privacy interest (and potentially other governmental interests) in avoiding disclosure even of the bare fact of whether someone has been investigated. *Id.* at 1092. But after the FOIA requester sued, the FBI determined a Glomar response was no longer appropriate given DeLay's own statements: "Although DeLay's action lessened his interest in keeping secret the *fact* that he was under investigation, he retained a second, distinct privacy interest in the *contents* of the investigative files." *Id.* The court went on to hold that this more specific privacy interest did not suffice for categorical withholding of all investigatory records, and remanded the case for further proceedings. *Id.* at 1099.

Also instructive is *Radar Online LLC v. FBI*, 692 F. Supp. 3d 318, 354 (S.D.N.Y. 2023), which involved a request for records relating to the investigation and prosecution of Jeffrey Epstein. The requester noted that certain individuals had acknowledged being victims of Epstein's

sex trafficking scheme and had given public interviews about their experiences. *Id*. The court nonetheless held that disclosing records relating to these victims was unwarranted, reasoning that it was "almost certain" that the records "contain highly sensitive material" about the victims and witnesses. *Id*. In other words, an individual's public statement acknowledging having been a victim did not operate as a subject matter waiver for all information related to Epstein.

Here, plaintiffs point to public statements Mr. Musk purportedly made about his security clearance status, *see, e.g.*, ECF No. 15-1 at 4; 15-11; 15-20 at 3, but these statements do not address every privacy interest that Mr. Watters' declaration identifies. In particular, these statements do not discuss possible conditions or waivers—but as the government has explained, an individual has a privacy interest not only in whether a clearance has been granted, but also in whether a grant has been made with conditions or waivers attached. First Watters Decl. ¶¶ 21-22. For example, as Mr. Watters notes, revealing conditions for a grant, "or even the fact that the grant was conditional, would reveal private information and invite speculation about the reasons for the imposition of the conditions." *Id*. ¶ 21. Likewise, disclosing that a clearance was granted under a waiver would disclose that the government's investigation had found "substantial issue information that would normally preclude eligibility," which would also invite speculation and unwanted attention. *Id*. ¶ 22 (quotation marks omitted).

Plaintiffs' brief suggests that at most, the government could redact any information about waivers or conditions. Pl. Br. 27. However, as we explain in the next section, redaction is not possible for this specific record.

## IV. It Is Not Possible to Redact Any Potential Waivers or Conditions

Plaintiffs' brief first suggests that information showing any conditions or waivers is not exempt, Pl. Br. 26, but also argues in the alternative that any such information could be redacted, avoiding the need to withhold the record in full, Pl. Br. 27. However, as Mr. Watters' supplemental

declaration clarifies, it is not possible to redact this information out of the record; thus, other information in the record is not segregable.

As Mr. Watters explains, the type of record at issue does not contain a field for conditions or waivers that is filled only when a condition or waiver is present, and blank otherwise. Second Watters Decl. ¶ 12. If that were the case, it would be possible to simply redact that field. *Id*. Instead, information about any conditions or waivers would likely be noted in several places on the form, and those notations would not be present unless a condition or waiver exists. *Id*. Thus, the form cannot be redacted in a way that would make it impossible to determine whether waivers or conditions are attached to any clearances. *Id*. A knowledgeable reader could determine, from the presence or absence of redactions, whether any conditions or waivers exist: the absence of redaction would indicate no conditions or waivers, while the presence of redaction would indicate there are conditions or waivers. *Id*. For these reasons, it is not possible to segregate only information about any clearances Mr. Musk held from information about any waivers or conditions, as plaintiffs suggest. *Id*.

**V. The Government Has Met the Foreseeable Harm Requirement**

The government has satisfied FOIA's reasonably foreseeable harm standard by demonstrating that individual privacy interests could reasonably be expected to be harmed by disclosure. Plaintiffs' argument to the contrary misapprehends the import of FOIA's foreseeable harm requirement for the privacy exemptions.

The government does not dispute that FOIA's foreseeable harm standard, which was added to the statute by the FOIA Improvement Act of 2016 and is codified at 5 U.S.C. § 552(a)(8), is a distinct legal requirement that "poses an additional burden on the agency" asserting an exemption. *Seife v. FDA*, 43 F.4th 231, 240 (2d Cir. 2022). Specifically, the agency must show—in addition to satisfying the relevant elements of an exemption—that it "reasonably foresees that disclosure

would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I), unless (as in exemption 3) the disclosure is prohibited by law, *id*. §§ 552(a)(8)(A)(i)(II), 552(a)(8)(B).

Courts have observed that Congress's primary concern in codifying the foreseeable harm requirement appears to have been a perceived overuse of the deliberative process privilege under exemption 5. *See Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021). But "an agency's burden under the foreseeable harm requirement may be more easily met" for other exemptions (and other exemption 5 privileges), because "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated" compared to the deliberative process privilege. *Id*.

Indeed, the D.C. Circuit's decision in *Reps. Comm. for Freedom of the Press v. FBI*, on which plaintiffs rely (Pl. Br. 27-28), squarely addressed the deliberative process privilege: it held that an agency must give a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." 3 F.4th 350, 370 (D.C. Cir. 2021). But this stringent articulation was based on that court's view that concerns about "overuse and abuse" of the deliberative process privilege had motivated the codification of the foreseeable harm requirement. *Id.* at 369 (citing legislative history). The legislative history contains no suggestion that Congress believed agencies were generally overusing FOIA's privacy exemptions.

Nor, as a logical matter, does the foreseeable harm requirement alter the picture for exemptions 6 and 7(C), because they already demand a showing of harm to individual privacy. Thus, the distinct *legal* requirement of showing foreseeable harm does not necessarily add to the agency's *factual* burden. For example, in *Groenendal v. EOUSA*, No. 20-CV-1030 (DLF), 2024 WL 1299333, at *10 (D.D.C. Mar. 27, 2024), the agency had not separately addressed foreseeable

harm for exemptions 6 and 7(C) in its declarations. But the court determined that the same facts that rendered the exemptions applicable (by showing an unwarranted invasion of personal privacy) also met its foreseeable harm burden. *See id*.

Plaintiffs' citation to *Leopold v. DOJ*, 94 F.4th 33, 38-39 (D.C. Cir. 2024), is not to the contrary. At issue there was a FOIA request seeking a monitor's report created under a deferred prosecution agreement of a bank. *Id*. at 35-36. The report had already been reviewed by the district judge overseeing the criminal action, who concluded in response to a motion to unseal that the report could be released as a judicial document in redacted form; however, an appellate court had determined that the report was not a judicial document, and thus rejected disclosure without opining on the redactions. *Id*. at 36. In response to a subsequent FOIA request, the government withheld the document in full under exemption 8, which broadly covers information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8); *see Leopold*, 94 F.4th at 35. The case thus presented a clear contrast between the "particularly broad" exemption 8, whose text does not include a showing of harm as an element, *see Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 4 (D.C. Cir. 2014), and circumstances where a separate Article III court had already found some information could be publicly released, necessarily suggesting a lack of foreseeable harm from release.

This case is not like *Leopold*. FOIA's privacy exemptions cannot be satisfied without showing a harm to a substantial individual privacy interest; the balancing test weighs that private harm against the public interest in disclosure. At least in this case—which does not involve the deliberative process privilege or exemption 8—it is not clear what further burden plaintiffs could seek to hold the government to.

## CONCLUSION

The government's motion for summary judgment should be granted.

Dated: July 18, 2025
      New York, New York

                                  Respectfully submitted,

                                  JAY CLAYTON
                                  United States Attorney
                                  Southern District of New York

By:    */s/ Peter Aronoff*
            PETER ARONOFF
            Assistant United States Attorney
            86 Chambers Street, Third Floor
            New York, New York 10007
            Telephone: (212) 637-2697
            E-mail: peter.aronoff@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I, Peter Aronoff, counsel of record for defendant, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Local Rule 7.1(c) allows to be excluded in preparing the following word count. I further certify that this brief contains 3948 words.

By: *<u>/s/ Peter Aronoff</u>*
Peter Aronoff
Assistant United States Attorney