UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
NEIL BEDI,

                              Plaintiffs,

                v.

UNITED STATES DEFENSE
COUNTERINTELLIGENCE AND SECURITY
AGENCY,

                              Defendant.

No. 25-cv-2333-DLC

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Dana R. Green
Alexandra Settelmayer
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Phone: (212) 556-5290
Fax: (212) 556-4634
dana.green@nytimes.com
alexandra.settelmayer@nytimes.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT MAY CONSIDER FACTS OCCURRING AFTER SEPTEMBER 2024 .. 2

    II.    THE GOVERNMENT CONCEDES THERE IS A SUBSTANTIAL PUBLIC INTEREST ........................................................................................................................ 3

    III.    ANY PRIVACY INTEREST IN THE RECORD IS MINIMAL ....................................... 5

    IV.    EXEMPTION 7(C) DOES NOT APPLY BECAUSE THE RECORD WAS NOT COMPILED FOR A LAW ENFORCEMENT PURPOSE ................................................ 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Citizens for Responsibility & Ethics in Washington v. United States Department of Justice*,
    746 F.3d 1082 (D.C. Cir. 2014) .................................................................................... 7

*Ctr. for Nat'l Pol'y Rev. on Race & Urb. Issues v. Richardson*,
    534 F.2d 35 (D.C. Cir. 1976) ........................................................................................ 3

*Ctr. for Pub. Integrity v. DOD*,
    No. 19-cv-3265, 2020 U.S. Dist. LEXIS 140591 (D.D.C. Aug. 6, 2020) ................... 8

*First Cap. Mgmt., Inc. v. Brickellbush, Inc.*,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) .......................................................................... 4

*Florez v. CIA*,
    829 F.3d 178 (2d Cir. 2016) ..................................................................................... 2, 3

*Hum. Rts. Def. Ctr. v. U.S. Park Police*,
    126 F.4th 709 (D.C. Cir. 2025) ................................................................................ 8, 9

*Intellectual Prop. Watch v. U.S. Trade Representative*,
    205 F. Supp. 3d 3343 (S.D.N.Y. 2016) ........................................................................ 3

*Knight First Amend. Inst. v. U.S. Citizenship & Immigr. Servs.*,
    30 F.4th 318 (2d Cir. 2022) ........................................................................................ 10

*Multi AG Media LLC v. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) .................................................................................... 9

*N.Y. Times Co. v. Dep't of Homeland Sec.*,
    959 F. Supp. 2d 449 (S.D.N.Y. 2013) .......................................................................... 6

*N.Y. Times Co. v. DOJ*,
    No. 23-cv-4402, 2025 U.S. Dist. LEXIS 30851 (S.D.N.Y. Feb. 21, 2025) ................. 5

*Nation Magazine v. United States Customs Service*,
    71 F.3d 885 (D.C. Cir. 1995) ........................................................................................ 7

*People for the Am. Way Found. v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) .............................................................................. 6

*Perlman v. DOJ*,
    312 F.3d 100 (2d Cir. 2002) ..................................................................................... 4, 5

*Radar Online LLC v. FBI*,
    692 F. Supp 3d 318 (S.D.N.Y. 2023) ........................................................................... 8

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ...................................................................................................8

*Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*,
    567 F. Supp. 3d 97 (D.D.C. 2021) .......................................................................................8, 9

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984) ................................................................................................10

*Tachiona v. Mugabe*,
    169 F. Supp. 2d 259 (S.D.N.Y. 2001) .....................................................................................2

*Tamayo v. Berryhill*,
    No. 16-cv-01947, 2017 U.S. Dist. LEXIS 86847 (N.D. Cal. June 6, 2017) ............................4

*Tavarez v. Moo Organic Chocolates, LLC*,
    641 F. Supp. 3d 76 (S.D.N.Y. 2022) .......................................................................................2

*In re UBS AG Secs. Litig.*,
    No. 07-cv-11225, 2012 U.S. Dist. LEXIS 141449 (S.D.N.Y. Sept. 28, 2012) ........................4

*WP Co. v. DOD*,
    626 F. Supp. 3d 69 (D.D.C. 2022) ..........................................................................................5

**Statutes**

5 U.S.C. § 552 ........................................................................................................................ *passim*

**Other Authorities**

5 C.F.R. § 551.203 .......................................................................................................................10

5 C.F.R. §§ 842.201–13 ...............................................................................................................10

38 C.F.R. § 3.12 ...........................................................................................................................10

Walter Isaacson, *Elon Musk* (2023) ................................................................................................5

Plaintiffs The New York Times Company and Neil Bedi (together, "The Times")[1] respectfully submit this reply memorandum of law in further support of their cross-motion for summary judgment.

## PRELIMINARY STATEMENT

In this FOIA suit, The Times seeks a single document listing the security clearances granted to Elon Musk. DCSA claims it may withhold the document pursuant to FOIA's exemptions for private, personal information. It may not. As set out previously, Musk has a minimal privacy interest in the document. And any residual privacy interest is outweighed by the substantial public interest in the record.

In opposition, DCSA is silent as to The Times's assertion that there is a substantial public interest in the document. Accordingly, DCSA cannot carry its burden to invoke FOIA's privacy exemptions, which require balancing the asserted privacy interest against the public interest. Nor does DCSA meaningfully address Musk and other officials' public discussion of his clearances and the impact on his privacy interest in this case. Instead, DCSA focuses on general principles, arguing that security clearance information categorically should be exempt from disclosure.

But the personal privacy exemptions to FOIA require consideration of the particular facts presented. Whether security clearance information can be properly withheld in other cases is not the question before the court. The question is whether *this* record can be withheld in *these* factual circumstances. It may not, and the Court should order disclosure.

---

[1] The Times adopts the same terms defined in its memorandum of law in support of its motion for summary judgment and in opposition to defendant's motion for summary judgment, ECF No. 14, (the "Opening Memorandum" or "Opening Mem.") throughout this reply memorandum, and refers to the Government's memorandum of law in opposition to plaintiffs' motion for summary judgment and reply in further support of defendant's motion for summary judgment, ECF No. 16, as "Opp."

**ARGUMENT**

**I.     THE COURT MAY CONSIDER FACTS OCCURRING AFTER SEPTEMBER 2024**

DCSA argues that the Court may not consider facts that occurred after September 2024, when it initially processed The Times's request. DCSA's position would require the Court to ignore the world as it exists and the obvious impact of Musk's government work on both his privacy interest and the public interest.[2] The Government's position lacks a foundation in law or logic.

First, DCSA argues that if the Court considers facts occurring after the date a request is initially processed, it will "create an endless cycle of judicially mandated reprocessing." Opp. 4 (internal quotation marks omitted). But DCSA considered facts that occurred after September 2024 when denying The Times's administrative appeals. *See* Decl. of Dana R. Green ("Green Decl.") Ex. 28, ECF No. 15-28 (DCSA's February 18, 2025 denial stating that its "decision to withhold this information has not changed nor has our opinion as to Mr. Musk's privacy interests in these records" despite his governmental role). And the Government has represented in briefing that DCSA's position is that security clearance information is categorically exempt, regardless of any changed factual circumstances. *See* Gov't Br., ECF No. 12, at 13 (articulating that "DCSA has a general policy and practice of not disclosing individuals' security clearance information"). No "reprocessing" is required to know what DCSA's response would be to a renewed FOIA request.

Second, DCSA makes little effort to engage with the substantive case law cited by The Times. Tellingly, DCSA is silent as to *Florez v. CIA*, which specifically held that a court could

---

[2] *See e.g.*, *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 82 n.6 (S.D.N.Y. 2022) (holding that the court is "not required to ignore reality"); *Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 318 (S.D.N.Y. 2001) ("In guiding the growth of common law, it is well to keep in mind that we would not be true to the task nor rise to its multiple challenges were we to ignore the world and the times we live in."), *aff'd in part & rev'd in part on other grounds*, 386 F.3d 205 (2d Cir. 2004).

properly consider events that occurred after the FOIA request where an agency had already "voluntarily undertaken and completed any 'reprocessing' that could arise from remanding." 829 F.3d 178, 188 (2d Cir. 2016). Just as in *Florez*, this Court knows how the DCSA will respond to any renewed request by The Times and, as such, it need not ignore "the reality in which this action proceeds." *Id.* at 188–89.

Finally, DCSA's approach would generate the very waste of administrative and judicial resources that it claims to be protecting against. There is a fully developed record here, and the parties have been afforded a full opportunity to address the issues now. It would be most efficient for the Court to consider circumstances as they existed when DCSA issued its final denial in February of 2025. *See Intellectual Prop. Watch v. U.S. Trade Representative*, 205 F. Supp. 3d 334, 352–53 (S.D.N.Y. 2016) (holding that "it would 'not serve the purposes of FOIA or the interests of justice of justice' to force Plaintiffs to file a new FOIA request and wait a significant amount of time to receive essentially the same response." (quoting *Florez*, 829 F.3d at 188)). Otherwise, The Times would be forced to re-file and re-litigate a nearly identical FOIA request, unnecessarily burdening the agency and the court.[3]

## II. THE GOVERNMENT CONCEDES THERE IS A SUBSTANTIAL PUBLIC INTEREST

Whatever time period the Court considers, there is a substantial public interest in understanding what security clearances Musk held, including that it would reveal: "whether the person who controls SpaceX and Starlink and who led DOGE has been deemed trustworthy enough by DCSA to access the sensitive information associated with those roles"; whether "DCSA

---

[3] The Times would not be precluded from filing such a lawsuit. *See Ctr. for Nat'l Pol'y Rev. on Race & Urb. Issues v. Richardson*, 534 F.2d 35, 353 (D.C. Cir. 1976) (holding that appellants would need to file a new FOIA request if they wished to litigate whether Congress's recent amendment entitled them to records previously found to be exempt, as that question presents "a different case and controversy").

3

had denied, revoked, or conditioned a clearance for reasons that could influence Musk's governmental decision-making, such as foreign ties"; whether "Musk and other officials were truthful when they asserted that he held a top-secret clearance and had unfailingly passed years of random drug tests"; and whether DCSA effectively responded to public information about Musk's drug use and foreign ties.[4] Opening Mem. 18–22.

In its opposition brief, DCSA does not address the public interest at all and therefore concedes the issue. *See In re UBS AG Secs. Litig.*, No. 07-cv-11225, 2012 U.S. Dist. LEXIS 141449, at *34 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address), *aff'd*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *First Cap. Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392–93 n.116 (S.D.N.Y. 2002) (considering an argument not addressed in opposition brief to be waived), *aff'd*, *First Cap. Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004); *Tamayo v. Berryhill*, No. 16-cv-01947, 2017 U.S. Dist. LEXIS 86847, at *18–19 (N.D. Cal. June 6, 2017) (finding waiver where a plaintiff failed to address defendant's argument in her reply brief in further support of her motion for summary judgment and in opposition to defendant's cross-motion for summary judgment).

It is DCSA's burden to justify withholding. *See* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"). DCSA's sole bases for withholding, exemptions 6 and 7(C), require the agency to establish that "the invasion of personal privacy resulting from release of the information would outweigh the public interest in disclosure." *Perlman v. DOJ*, 312 F.3d 100, 106

---

[4] Even if the Court confined its analysis to September 2024, the record still would shed light on government activities. For example, if records from September 2024 showed DCSA withheld a top security clearance or imposed conditions that had not yet been met—as it did between 2018 and 2021 (*see* Opening Mem. 8–9)—this would indicate that Musk either did not have a high-level clearance, contrary to officials' public statements, or obtained one through political intervention, undercutting the DCSA clearance process.

(2d Cir. 2002), *vacated*, 541 U.S. 970 (2004), *reaff'd*, 380 F.3d 110 (2d Cir. 2004). An agency necessarily fails to meet this burden when the agency does not even attempt the required balancing. Summary judgment should be granted to The Times on this ground alone. *See, e.g.*, *N.Y. Times Co. v. DOJ*, No. 23-cv-4402, 2025 U.S. Dist. LEXIS 30851, at *5 (S.D.N.Y. Feb. 21, 2025) (explaining that "if the Government fails to meet its burden of showing that the requested information may be withheld, the Court may grant summary judgment in favor of the party requesting the information" (cleaned up)).

### III.   ANY PRIVACY INTEREST IN THE RECORD IS MINIMAL

For the reasons set out previously, DCSA also has not established a substantial privacy interest that would outweigh the admittedly substantial public interest in the record at issue. *See generally* Opening Mem. 23–25.

Rather than engage with those arguments, DCSA sets up a straw man, incorrectly presenting The Times's position to be that there is "no privacy interest in a person's clearance status." Opp. 5. That is incorrect. Whether there can *ever* be a privacy interest in a person's clearance status is not at issue. The Times acknowledges that there may be rare cases where the Government can establish that a privacy interest exists. But The Times's contention is that a list of clearances typically "only minimally implicates a personal privacy interest." *WP Co. v. DOD*, 626 F. Supp. 3d 69, 82 (D.D.C. 2022) (cleaned up). That is, in part, because whether a person does or does not have a security clearance—without more—does not inherently reflect on that person's character. *See* Opening Mem. 23.

And in *this* case that minimal privacy interest is further diminished by the fact that the record concerns a former public official about whom a great deal of personal information is already well known—indeed, few people have been interviewed more frequently or written about more extensively. *See, e.g.*, Walter Isaacson, *Elon Musk* (2023). DCSA's argument that the record

5

should be withheld to avoid "unwanted public attention" cannot be taken seriously. *See* Decl. of Charles Watters ¶¶ 19–20, ECF No. 11 ("First Watters Decl."). And Musk and other public officials repeatedly have publicly discussed his clearances and its relevance to the public, further and fatally undermining any privacy interest. *See* Opening Mem. 23–25.

DCSA gives no consideration to that context, even though it is well settled that "the privacy interest at stake may vary depending on the context in which it is asserted." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007). Instead, DCSA argues in the abstract that factors such as dual citizenship, foreign relatives, and foreign business connections—all innocuous potential bases for a clearance denial—"could still plausibly be private information that the applicant would not want disclosed." Opp. 6. Perhaps that is true in other contexts. But not here. It is extensively well documented—and Musk has regularly discussed—information like his dual citizenship, foreign relatives, and foreign business connections. Opening Mem. 7–13. Whether information is already public is a significant factor in determining the existence and weight of a privacy interest. *See e.g.*, *N.Y. Times Co. v. Dep't of Homeland Sec.*, 959 F. Supp. 2d 449, 453 (S.D.N.Y. 2013) (holding that "such privacy interest may be limited or eliminated entirely where the information at issue is already public"). And DCSA concedes that The Times is "broadly correct" that "an individual may diminish or waive an otherwise-valid privacy interest . . . by making public statements." Opp. 6–7.

DCSA nevertheless asserts that because Musk's public statements "do not address *all* of the information the Government has withheld as exempt (including any *possible* conditions or waivers on any security clearances)," the privacy interest is not diminished.[5] Opp. 7 (emphasis

---

[5] DCSA argues that the agency's policy is not to consider an individual's public statements. Opp. at 7 n.3. But an agency's "policy" cannot set aside DCSA's statutory obligations under FOIA.

6

added). Regardless of whether an individual's privacy interest has been waived, FOIA's privacy exemptions require disclosure when the public interest in disclosure outweighs that privacy interest. Further, the three cases DCSA relies on do not support its position.

*Nation Magazine v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995) upheld, under exemption 7(C), a *Glomar* response to a request for "the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations." The D.C. Circuit previously had held that there is a strong privacy interest and a negligible public interest in such information. By contrast, this case is one where the information is not categorically exempt and the Government concedes there is a public interest in the record. In addition, even in *Nation Magazine*, the court drew a distinction between witnesses who had not spoken publicly and a witness, Ross Perot, who had: "Perot's decision to bring information connecting himself with such efforts into the public domain . . . effectively waive[s] Perot's right to redaction of his name from documents on events that he has publicly discussed." *Id*.

Second, *Citizens for Responsibility & Ethics in Washington v. United States Department of Justice ("CREW")*, 746 F.3d 1082 (D.C. Cir. 2014) squarely supports disclosure. There, the court compelled disclosure under FOIA, finding that Representative Tom DeLay waived any privacy interest in the facts that he had been under FBI investigation and that the investigation ended with a decision not to charge him. *Id.* at 1091–92. The Times similarly seeks a record of the *outcome* of DCSA's clearance investigation, not the "contents of the investigative files" held by the agency. Opp. 8 (citing *CREW*, 746 F.3d at 1092).[6] The logic of *CREW* compels disclosure.

---

[6] Notably, *CREW* held that even though DeLay retained a privacy interest in the underlying investigative files, whose contents he had not disclosed, those files were not categorically exempt under exemption 7(C), and the agency was required to make a particularized showing that this privacy interest outweighed the public interest for each document or portion that it sought to withhold. 746 F.3d at 1096.

7

Third, DCSA relies on *Radar Online LLC v. FBI*, 692 F. Supp 3d 318, 354 (S.D.N.Y. 2023), where the court found that certain victims of Jeffrey Epstein retained a privacy interest in "highly sensitive material" about their victimization. But that opinion expressly relied on facts that the individuals were "not public officials" and that their activities were not "significant in their connection to agency conduct." *Id*. And the request sought investigative records, not merely the outcome—all in obvious contrast to this case.

Finally, DCSA argues that even if Musk has little privacy interest in the fact of a clearance, there is a privacy interest in "possible conditions or waivers" attached to those clearances. Opp. 9. Assuming, *arguendo*, that such conditions or waivers exist—and that they implicate any privacy interest—DCSA offers no real explanation for why redaction cannot address that interest.[7] Instead, DCSA reiterates the same theoretical harm: disclosing the mere existence of a redacted, unknown condition or waiver might "invite speculation and unwanted attention." *Id.* But Musk has already prompted intense public scrutiny and speculation with respect to these very topics through his own conduct. *See, e.g.*, Green Decl. Ex. 11; Opening Mem. at 8 n.43. And these kinds of speculative harms are insufficient to satisfy the Government's "independent and meaningful burden" of establishing foreseeable harm. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021); *see also Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 709, 716–17 (D.C. Cir. 2025) ("speculative or abstract fears . . . . do not establish a foreseeable harm sufficient to justify withholding the [record]."); *cf. e.g.*, *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 127 (D.D.C. 2021) (agency satisfied foreseeable-harm

---

[7] *In camera* review may be appropriate to resolve such claims. *See, e.g.*, *Ctr. for Pub. Integrity v. DOD*, No. 19-cv-3265, 2020 U.S. Dist. LEXIS 140591, at *5 (D.D.C. Aug. 6, 2020) ("*In camera* review is appropriate when such review is necessary for a district court to make a responsible de novo determination on the claims of exemption." (cleaned up)).

standard for withholding employee names by providing evidence of "specific examples of harassment and threats against CBP employees").

In that respect, the decision in *Human Rights Defense Center* is particularly instructive. There, the Park Police argued that there was a privacy interest in the names of "low-ranking" officers accused of misconduct, especially where "no court ever found that the allegations were true." 126 F.4th at 716. The D.C. Circuit held that the agency failed to show that exemption 6 was even implicated because the asserted privacy interests were "wholly conclusory" and because there was no evidence of "the potential harm from disclosing their names." *Id.* at 715. The court found that the Park Police did not "provide any concrete basis to conclude that release of these officers' names raises threats more palpable than mere possibilities" and accordingly ordered disclosure. *Id.* at 716–17. Here, too, DCSA's claim that disclosure "would reveal private information and invite speculation," Opp. 9, is simply too conclusory to establish a substantial privacy interest. Because DCSA has failed to establish that a "significant privacy interest is implicated, FOIA demands disclosure." *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (cleaned up).

## IV. EXEMPTION 7(C) DOES NOT APPLY BECAUSE THE RECORD WAS NOT COMPILED FOR A LAW ENFORCEMENT PURPOSE

Although DCSA's failure to address the public interest in disclosure means it has not met its burden under either exemption 6 or 7(C), the latter would not apply because the document at issue—a list of Musk's clearances—was not compiled for a law enforcement purpose. Opening Mem. 16–18. In an attempt to argue the contrary, DCSA offers a second declaration averring that this list is used "to avoid breaches in national security" by enabling personnel "to determine the individual's clearance status to determine whether they are eligible to be granted access," Second Decl. of Charles Watters ¶¶ 5, 8, ECF No. 17 ("Second Watters Decl."), and contends that such

"efforts to proactively prevent violations of the law and maintain security fall within an ordinary understanding of law enforcement," Opp. 2–3 (citing *Knight First Amend. Inst. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 328 (2d Cir. 2022)). This view overstates the holding of *Knight* and would unjustifiably sweep within exemption 7 a boundless array of ordinary records.

*Knight* involved internal State Department policies for visa adjudications, including "guidelines for when spouses and children trigger the requirement for further security investigation and how to conduct that process." 30 F.4th at 324. Unsurprisingly, because the documents were intended to "provide comprehensive guidance to employees in the field on how to apply and enforce the laws," the Second Circuit found that they had been compiled for law enforcement purposes. *Id.* at 328. The court recognized, however, that "some aspects of visa adjudication might fall outside the common understanding of 'law enforcement.'" *Id.*

At no point does *Knight* suggest that a record documenting the *outcome* of a visa adjudication, as opposed to instructions for *investigating* an applicant's background, would have been compiled for law enforcement purposes. Indeed, all sorts of "generic HR file[s]," Opp. 2, are used to ensure compliance with laws: agency employment records are used to verify eligibility for federal retirement benefits, *see, e.g.*, 5 C.F.R. §§ 842.201–13; payroll records are used to verify eligibility for Fair Labor Standards Act protections, *see, e.g.*, 5 C.F.R. § 551.203; and military service records are used to verify eligibility for Department of Veterans Affairs benefits, *see, e.g.*, 38 C.F.R. § 3.12. Accordingly, courts have taken care to circumscribe the scope of exemption 7 to prevent it from applying to every record that can be used to ensure compliance with some law. *See, e.g.*, Stern v. FBI, 737 F.2d 84, 89 (D.C. Cir. 1984) (explaining that "an agency's general internal monitoring of its own employees to insure [*sic*] compliance with the agency's statutory mandate and regulations is not protected from public scrutiny under Exemption 7").

Here, as DCSA recognizes, "a list of an individual's security clearances is distinct from an underlying investigative file." Opp. 1. That such a list can be used to help prevent "potentially criminal unauthorized disclosures" of information, *id.*, does not mean the list itself—in contrast to instructions on performing background investigations—was compiled for a law enforcement purpose.

## CONCLUSION

For the foregoing reasons, Plaintiffs' cross-motion for summary judgment should be granted.

Dated: August 8, 2025  
New York, New York

THE NEW YORK TIMES COMPANY

By: */s/ Dana R. Green*  
Dana R. Green  
Alexandra Settelmayer  
The New York Times Company  
Legal Department  
620 8th Avenue  
New York, NY 10018  
Phone: (212) 556-5290  
Fax: (212) 556-4634  
dana.green@nytimes.com  
alexandra.settelmayer@nytimes.com

*Attorneys for Plaintiffs*

11

## **CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the word count requirements of Local Civil Rule 7.1(c). According to the word count in Microsoft Word, which was used to prepare this brief, the number of words in this document, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, is 3,494.

Dated: August 8, 2025
      New York, New York

                                              */s/ Dana R. Green*
                                              Dana R. Green