UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
THE NEW YORK TIMES COMPANY and NEIL      :
BEDI,                                    :
                                         :
                        Plaintiffs,      :    25cv2333 (DLC)
            -v-                          :
                                         :    OPINION AND
UNITED STATES DEFENSE                    :        ORDER
COUNTERINTELLIGENCE AND SECURITY         :
AGENCY,                                  :
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X

APPEARANCES:

For plaintiffs The New York Times Company and Neil Bedi:
Dana Robinson Green
The New York Times Company
620 Eighth Avenue
New York, NY 10018

For defendant United States Defense Counterintelligence and
Security Agency:
Peter Max Aronoff
United States Attorney's Office for the Southern District of New
York
86 Chambers Street
New York, NY 10007

DENISE COTE, District Judge:

     The New York Times Company and Neil Bedi have filed suit

against the United States Defense Counterintelligence and

Security Agency ("DCSA") under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, to compel production of a single,

two-page document listing any security clearances granted to

Elon Musk.  DCSA asserts that it properly withheld the document under FOIA Exemptions 6 and 7(C), on grounds that disclosure of the document would invade Musk's privacy.  The parties cross-moved for summary judgment.  For the following reasons, the plaintiffs' motion is granted, and the defendant's motion is denied.

## Background

The following facts are drawn from the materials submitted as part of the parties' cross-motions for summary judgment. They are undisputed unless otherwise noted.

DCSA is an agency within the Department of Defense.  DCSA is the largest provider of background investigative services in the federal government and its work includes adjudicating security clearance applications for federal government employees and contractors.  Its adjudication of security clearances is structured by guidance, known as the Security Executive Agent Directive 4 ("SEAD-4"), that applies to all executive branch agencies that adjudicate security clearance.  SEAD-4 requires that DCSA evaluate the "whole person" to determine whether an individual is an acceptable security risk.  SEAD-4 lays out thirteen relevant topics for the "whole person" assessment, which cover allegiance to the United States, foreign influence or preference, sexual behavior and personal conduct, finances,

alcohol and drug use, psychological conditions, criminal conduct, handling protected information, outside activities, and the use of information technology.

In addition to granting or denying a clearance, DCSA may also grant a clearance with conditions or a waiver based on its findings.  Conditions are imposed when DCSA determines that an individual is only eligible for a clearance if they comply with certain requirements, for example, participation in counseling sessions based on a certain issue.  DCSA may grant a clearance with a waiver when it finds "substantial issue information that would normally preclude eligibility" but an approval authority determined that the benefit of the individual's eligibility "clearly outweighs any security concerns."

Elon Musk -- whose security clearances, if any, are the subject of the plaintiffs' FOIA request -- is the founder of several companies, including SpaceX and Starlink.  The federal government has awarded numerous contracts to SpaceX over the past decade, which make it one of the largest federal contractors.  It is not disputed that SpaceX handles sensitive government information.  It is also not disputed that Starlink, a subsidiary of SpaceX, also contracts with the federal government and provides satellite-based internet services relied upon by the military.

On January 20, 2025, President Trump issued an executive order creating the Department of Government Efficiency ("DOGE"). See Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) ("DOGE Executive Order"). The DOGE Executive Order renamed the existing United States Digital Service, located within the Executive Office of the President, the "United States DOGE Service". It additionally directed the entity to "implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." Id. § 1.

Around the time of the issuance of the DOGE Executive Order, President Trump appointed Musk to serve as a special government employee. He left government service in late May 2025. During his time in the federal government, the President "repeatedly stated that Musk is in charge of DOGE," and that whatever Musk's role was "on paper," his role was effectively to act "as the leader of DOGE." Does 1-26 v. Musk, 771 F. Supp. 3d 637, 668 (D. Md. 2025).

During his time as a major government contractor and as a special government employee, Musk has publicly discussed his security clearance. In October 2024, Musk told a public town hall that he had a top-secret clearance. In February 2025, Congressman Mark Green stated in a hearing that Musk "has a top secret security clearance." Musk reposted a clip of Congressman

Green's statement on social media on February 14, writing, "I've had a top secret clearance for many years and have clearances that themselves are classified."

Musk has also publicly discussed issues relevant to SEAD-4 topics, including his personal drug use and contacts with foreign leaders, on X.  In October 2022, Musk posted that he had "spoken to Putin only once and that was about 18 months ago." In August 2023, Musk stated that he occasionally uses ketamine, for which he has a prescription.[1]  And, in January 2024, Musk wrote that, after he smoked marijuana during a video podcast appearance, "I agreed, at NASA's request, to do 3 years of random drug testing."  These three social media posts from Musk on X have collectively been viewed over 2 million times.

On September 17, 2024, the plaintiffs submitted the FOIA request underlying this litigation.  The plaintiffs' request seeks "a list of security clearances" for Elon Musk, including "any details about the extent and purview of each of the clearances."

---

[1] The United States Drug Enforcement Administration has classified ketamine as a Schedule III controlled substance, and the federal questionnaire for employees and contractors seeking a security clearance directs applicants to disclose whether they have used ketamine in the last seven years.  See U.S. Drug Enforcement Administration, Drug Scheduling, https://www.dea.gov/drug-information/drug-scheduling.

In a letter dated October 2, DCSA responded, stating it had identified two responsive pages but denying access under FOIA Exemptions 6 and 7(C), on the ground that the plaintiffs sought "privacy-related information pertaining to a third party and the privacy interest outweighs disclosure." DCSA noted that an individual's status as a public figure may factor into the privacy balance, but that "a public figure does not, by virtue of their status, forfeit all rights of privacy." The plaintiffs appealed by letter dated December 15.

In a letter dated January 27, 2025, DCSA affirmed its denial of the plaintiffs' FOIA request. Among other things, DCSA asserted that while Musk "maintains a high profile as a government contractor and [is a] purported consultant to the incoming administration, . . . he is still a private citizen." The agency concluded that, in its view, although "Musk's adjudicative file listing those clearances he might have been granted may be of general interest to the public, this information would do little to shed light on DCSA's performance of its statutory mandate," and its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

The plaintiffs petitioned DCSA for reconsideration on February 5. They observed, among other things, that Musk was not a "private citizen" -- as DCSA had asserted in its January

27 affirmance -- since media reports had already noted that Musk was serving as a special government employee.  On February 18, 2025, DCSA again denied the plaintiffs' FOIA request, asserting without reasoning that its decision to withhold the requested information "has not changed nor has our opinion as to Mr. Musk's privacy interests in these records."

The plaintiffs initiated this action on March 20, 2025.  An Order of April 29 endorsed the parties' joint request to resolve the case via cross-motions for summary judgment and adopted their proposed briefing schedule.  DCSA filed its opening papers on May 30.  The motions became fully submitted on August 8.

## Discussion

FOIA was enacted in 1966 "to facilitate public access to Government documents."  Bloomberg L.P. v. United States Postal Serv., 118 F.4th 307, 313 (2d Cir. 2024) (citation omitted). The statute is "premised on a policy strongly favoring public disclosure of information in [the] possession of federal agencies."  Id. (citation omitted).

FOIA requires that federal agencies make requested documents available to the public unless one of its nine exemptions applies.  See id. at 313-14; see also 5 U.S.C. § 552(a)(3)(A), (b)(1)-(9).  The statute authorizes federal courts "to enjoin the agency from withholding agency records and

to order the production of any agency records improperly withheld from the complainant." Cox v. Dep't of Just., 111 F.4th 198, 207 (2d Cir. 2024) (quoting 5 U.S.C. § 552(a)(4)(B)). FOIA's exemptions are given "a narrow compass, and the limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Bloomberg L.P., 118 F.4th at 314 (citation omitted).

"FOIA cases are often resolved by summary judgment." Id. at 312 (citation omitted). An agency withholding documents responsive to a FOIA request bears the burden of demonstrating that a FOIA exemption applies. Id. at 313. A district court may award summary judgment to the agency based on declarations if the declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." ACLU Immigrants' Rts. Project v. U.S. Immigr. & Citizenship Servs., 58 F.4th 643, 651 (2d Cir. 2023) (citation omitted). In other words, the "agency's justification is sufficient if it appears logical and plausible." Bloomberg L.P., 118 F.4th at 313 (citation omitted). All doubts are resolved "in favor of disclosure." Id. (citation omitted).

DCSA seeks to withhold the single document under FOIA Exemptions 6 and 7(C). See 5 U.S.C. § 552(b)(6), (7)(C). Under both exemptions, DCSA's justification for withholding fails. Undisputed record evidence establishes that neither exemption applies because the substantial public interests in disclosure outweigh any cognizable privacy interest Musk holds.

I.    Exemption 6

A.    Legal Standard

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Cook v. Nat'l Archives & Recs. Admin., 758 F.3d 168, 175 (2d Cir. 2014) (citation omitted).

Courts apply a two-step analysis when evaluating whether the government correctly withheld records under Exemption 6. Id. at 174. First, a court determines whether the record withheld is a "personnel," "medical," or "similar file." Id. (citation omitted). A record is a "similar file" if it

"contains personal information identifiable to a particular person." Id. at 175.

Second, after that threshold condition is met, a court applies a balancing test. This is the "crux" of the exemption inquiry. Id. (citation omitted). Here, a court "balance[s] the public need for the information against the individual's privacy interest" to assess whether disclosure is proper. Id. at 174 (citation omitted). To do so, a court first determines "whether there is any privacy interest in the information sought." Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 284 (2d Cir. 2009). Once a "more than de minimis privacy interest is implicated," a court considers whether there is a public interest in disclosure. Id. at 285 (citation omitted). "[T]he Supreme Court has made clear that there is only one relevant [public] interest, namely, to open agency action to the light of public scrutiny." Id. (citation omitted). And, when evaluating both the privacy interest and the public interest in disclosure, a court may draw on "case law interpreting both Exemptions 6 and 7(C)." Id. at 284 n.9. Finally, a court balances "the public interest in disclosure against the privacy interest Congress intended the Exemption to protect." Id. at 284 (citation omitted). Only a "clearly unwarranted invasion of personal

privacy" justifies withholding under Exemption 6.  5 U.S.C.
§ 552(b)(6).

    B.   Application

As previewed above, DCSA failed to meet its burden of
demonstrating that the two-page description of Musk's security
clearances, if any, may be withheld under Exemption 6.  The
parties do not dispute that the list qualifies as a "similar
file" and satisfies the step one inquiry, since, by definition,
it contains "personal information identifiable" to Musk alone.
See Cook, 758 F.3d at 175.  DCSA's argument fails, however, at
the step two balancing inquiry, where the record evidence
establishes that any privacy interest of Musk's is outweighed by
the substantial public interests in disclosure.

    1.   Privacy Interest

First, to the extent Musk has a privacy interest in the
fact that he holds a security clearance, he has waived it.  He
has discussed publicly that he holds a "top secret clearance"
and, in doing so, has "diminished" any privacy interest he held
in that fact.  See Citizens for Resp. & Ethics in Washington v.
U.S. Dep't of Just., 746 F.3d 1082, 1092 (D.C. Cir. 2014)
("[Former House Majority Leader's] obvious privacy interest in
keeping secret the fact that he was the subject of an FBI

investigation was diminished by his well-publicized announcement of that very fact.").

Musk's diminished privacy interest is underscored by the limited information plaintiffs sought in their FOIA request. Plaintiffs do not seek any questionnaire Musk may have submitted to obtain a security clearance. Nor do they ask for any investigative files or information compiled during the adjudication process. Plaintiffs seek only a "list" of his security clearances and details about "the effect and purview" of each of the clearances.

DCSA concedes as a general matter that a person "may diminish or even waive an otherwise-valid privacy interest . . . by making public statements" regarding the information at issue. It concedes as well that Musk's public statements about his security clearance may be relevant to the Court's analysis of his privacy interest in the disclosure at issue here. But DCSA contends that withholding is still justified. DCSA argues that Musk's public statements do not address whether any security clearance he may have been granted was subject to conditions or waivers, and that it is not possible to redact from the responsive two-page document "any information regarding conditions and waivers" since that information is not contained in a single field in the document. As a result, any condition or waiver "would likely be noted in several places on the form,

and those notations would not be present unless a condition or
waiver exists." Accordingly, DCSA contends, a disclosure, even
with redactions, will reveal whether a security clearance was
granted with or without conditions or a waiver.

It is true that Musk has not publicly discussed whether his
security clearance is subject to any conditions or waivers and,
if so, what those conditions or waivers entail. Musk has,
however, publicly discussed his drug use, NASA's requirement
that he submit to random drug testing due to his drug use, and
his contacts with foreign leaders. His posts on X on these
topics have collectively garnered over 2 million views. And it
is undisputed that drug use and foreign contacts are two factors
DCSA considers when determining whether to impose conditions or
waivers on a security clearance grant. DCSA fails to explain
why, given Musk's own, extensive disclosures, the mere
disclosure that a condition or waiver exists (or that no
condition or waiver exists) would subject him to "embarrassment
or humiliation." See Associated Press, 554 F.3d at 288.
Moreover, in the event that a condition or waiver exists and its
particular contents implicate Musk's privacy interests, then
DCSA may submit the document to the Court for ex parte, in
camera review of its proposed redactions. See Associated Press
v. U.S. Dep't of Justice, 549 F.3d 62, 67 (2d Cir. 2008)
("Under 5 U.S.C. § 552(a)(4)(B), district courts are authorized

13

to conduct <u>in camera</u> review of disputed documents to determine whether the documents, in whole or part, are properly withheld under a FOIA exemption."); <u>see also</u> 5 U.S.C. § 552(a)(4)(B).

DCSA also attempts to justify its withholding by explaining that its "regular practice and policy" is to withhold information regarding an individual's security clearance, barring a "privacy waiver" from the individual. DCSA also notes that Musk's public statements would not qualify as such a waiver under DCSA policy. But DCSA's internal policies do not control the FOIA exemption analysis.

Finally, DCSA cites three cases to contend that, to the extent that Musk's public statements justify disclosing information that otherwise would be withheld under FOIA, the disclosure should "not reveal anything" that he did not, such as the existence of conditions or waivers for any security clearance. But the cited cases do not support such a bright-line rule. In one, the court affirmed the withholding of documents containing identifying information about third parties who did <u>not</u> make the public statement at issue. <u>See</u> <u>Nation Mag.</u> <u>v. U.S. Customs Servs.</u>, 71 F.3d 885, 896 (D.C. Cir. 1995) (applying Exemption 7(C)). The second case is easily distinguished on the facts. There, the court held that individuals who acknowledged being victims of Jeffrey Epstein's sex trafficking scheme still had a significant privacy interest

in the nondisclosure of detailed records because those records likely "contain[ed] highly sensitive material" and they were "not public officials." See Radar Online LLC v. FBI, 692 F. Supp. 3d 318, 354 (S.D.N.Y. 2023). And the remaining case cited by DCSA actually supports disclosure. There, after a former House Majority Leader publicly confirmed that he had been under FBI investigation but no charges were brought against him, a court found that his privacy interest in the existence or outcome of the FBI investigation was diminished, but his privacy interest in the contents of the investigative file was not impacted. See Citizens for Resp. & Ethics in Washington, 746 F.3d at 1091-92. Here, the plaintiffs have not requested the contents of the underlying investigative file.

            2.   Public Interest

    Moving on to the other side of the balancing inquiry, there are at least two significant public interests at play. First, the public has an interest in knowing whether the leader of SpaceX and Starlink holds the appropriate security clearances. It is undisputed that, at the time of the plaintiffs' original request in September 2024, Musk owned two companies, SpaceX and Starlink, that continue to provide the federal government with critical national security services and handle sensitive government information. Thus, it is of substantial public interest to know whether Musk holds a security clearance.

15

Indeed, it is likely that is why Musk and Representative Green
publicly asserted that Musk has a top-secret security clearance.

Second, courts have repeatedly recognized a public interest
in understanding the thoroughness, fairness, and accuracy of
government investigations and operations.  See, e.g., Citizens
for Resp. & Ethics in Washington, 746 F.3d at 1093-94
(collecting cases).  Accordingly, DCSA does not contest that
there is a public interest in disclosing documents that shed
light on the thoroughness, fairness, or accuracy of security
clearance determinations.  Instead, DCSA contends that the
public interest in disclosure here is minimal because
"disclosing the list of security clearances that any one
individual has received" would not give "any meaningful insight
into . . . the thoroughness of DCSA's investigation, the
fairness and accuracy of its adjudication, or its response to
any new information."  It is mistaken.  After all, even if the
requested record reflects "only one data point regarding
[DCSA's] performance of its statutory duties, it is a
significant one," given Musk's prominence and level of
authority.  See id. at 1094.

Musk's numerous public statements regarding his own drug
use and contacts with foreign leaders only enhance the public
interest in disclosure.  DCSA has a duty of "continuous vetting"
to ensure that individuals granted security clearances "continue

16

to meet clearance requirements and should continue to hold positions of trust." And, as DCSA concedes, "the most straightforward public interest that might attach" is "the public's ability to understand DCSA's operations or activities." The list of Musk's security clearances, including any conditions or waivers, could provide meaningful insight into DCSA's performance of that duty and responses to Musk's admissions, if any. See Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984) (identifying public interests "in knowing that a government investigation itself is comprehensive . . . and that those who are accountable are dealt with in an appropriate manner"). Thus, there are substantial public interests in disclosure here.[2]

---

[2] Plaintiffs argue that there is a strong public interest in disclosure based on events that occurred after their September 2025 FOIA request -- namely, Musk's employment as a special government employee in January 2025. Doing so would mark a departure from the "general rule" that "a FOIA decision is evaluated as of the time it was made and not at the time of a court's review." N.Y. Times Co. v. DOJ, 756 F.3d 100, 110 n.8 (2d Cir. 2014). There is no need to reach this issue here, however, because, as explained above, there is a substantial public interest in disclosure even based on Musk's position at the time of plaintiffs' original FOIA request.

Moreover, it is reasonable for the Government to take the position that this Court may consider public statements about Musk's security clearance status made by Musk and others after plaintiffs' FOIA request if they impact his privacy interest, see supra Section I.B.1; Florez v. CIA, 829 F.3d 178, 188-89 (2d Cir. 2016), and yet assume that, if plaintiffs wanted to learn what security clearances Musk held after becoming a government official, they would make a new request, given that significant change in circumstances.

3.    Balancing Test

The final step is to balance the two interests: any privacy
interest Musk holds and the public's interests in gaining
insight into DCSA's adjudicative process and knowing whether
Musk holds a security clearance.  In this case, the relative
magnitudes of the interests identified are sufficient to decide
the balancing question.  The Government does not dispute that
Musk's public statements diminished any privacy interest he had
in the fact that he holds a security clearance.  And, as
explained above, DCSA has not established that Musk holds a more
than de minimis privacy interest in the existence or
non-existence of conditions or waivers on that security
clearance.  Thus, DCSA has not met its burden of demonstrating
that any privacy interest remaining after Musk's public
statements outweighs the substantial public interests in
disclosure, such that disclosure would constitute "a clearly
unwarranted invasion of personal privacy."  See 5 U.S.C.
§ 552(b)(6).

II.  Exemption 7(C)

A.    Legal Standard

DCSA also seeks to withhold the document under FOIA
Exemption 7(C).  See 5 U.S.C. § 552(b)(7)(C).  Exemption 7(C)
permits the withholding of "records or information compiled for
law enforcement purposes, but only to the extent that the

production of such law enforcement records or information . . .
could reasonably be expected to constitute an unwarranted
invasion of personal privacy." Id. To evaluate whether records
were correctly withheld under Exemption 7(C), courts apply a
two-step analysis similar to the one applied under Exemption 6.
At the first step, a court determines whether the record
withheld falls into the substantive scope of the
exemption -- here, "records or information compiled for law
enforcement purposes." Id. This threshold inquiry focuses "on
how and under what circumstances the requested files were
compiled and whether the files sought relate to anything that
can fairly be characterized as an enforcement proceeding."
Clemente v. Fed. Bureau of Investigation, 867 F.3d 111, 119
(D.C. Cir. 2017) (citation omitted). And courts have understood
"law enforcement" to include "not just the investigation and
prosecution of offenses that have already been committed, but
also proactive steps designed to prevent criminal activity and
to maintain security." Knight First Amend. Inst. at Columbia
Univ. v. U.S. Citizenship & Immig. Servs., 30 F.4th 318, 328 (2d
Cir. 2022) (citation omitted).

After that threshold condition is met, the court applies
the same balancing test as it does under Exemption 6, balancing
"the public need for the information against the individual's
privacy interest." Cook, 758 F.3d at 174 (citation omitted).

Withholding is justified under Exemption 7(C) if the information "reasonably can be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thus, Exemption 7(C) is more protective of an individual's privacy rights than Exemption 6, which requires a "clearly unwarranted" invasion of privacy rights to prevent disclosure.

   B.   Application

   The parties dispute whether the requested record was "compiled for law enforcement purposes." It is unnecessary to resolve that threshold issue because the Exemption 7(C) inquiry can be resolved on the step two balancing test alone. As explained in more detail above, DCSA has not met its burden to prove that Musk's privacy interest outweighs the significant public interests in disclosure. Even applying Exemption 7(C)'s more privacy-protective standard, DCSA has failed to establish that disclosure of the requested document "reasonably can be expected to constitute an unwarranted invasion of [Musk's] personal privacy," 5 U.S.C. § 552(b)(7)(C), given Musk's own public statements, the narrow scope of plaintiffs' FOIA request, and the substantial public interests at stake. Moreover, to the extent any detail in the document invades Musk's personal privacy beyond the issues discussed here, the defendant may propose redactions for the Court's ex parte, in camera review.

## Conclusion

The plaintiffs' June 27, 2025 motion for summary judgment is granted.  The defendant's May 30, 2025 motion for summary judgment is denied.  Should the Government seek to redact the document, it may submit its proposed redactions to the Court by October 17, 2025 for ex parte, in camera review.

Dated:     New York, New York
           October 8, 2025

                              _____
                              DENISE COTE
                              United States District Judge