UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
NEIL BEDI,

                Plaintiffs,

                v.

UNITED STATES DEFENSE
COUNTERINTELLIGENCE AND SECURITY
AGENCY,

                Defendant.

25 Civ. 2333 (DLC)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND IN SUPPORT OF THE GOVERNMENT'S CROSS-MOTION FOR RECONSIDERATION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

SEAN S. BUCKLEY
PETER ARONOFF
Assistant United States Attorneys

**CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1
ARGUMENT .................................................................................................................................. 2
    I.   Legal Standard .................................................................................................. 2
    II.  Plaintiffs' Motion for Reconsideration Should Be Denied ....................................... 3
    A.  The Court Correctly Found that Page One Is Not Responsive ................................. 3
    B.  The Court Correctly Determined that Investigation-Related Information
    Is Exempt ........................................................................................................... 7
    C.  Plaintiffs' Other Arguments for Reconsideration Lack Merit ............................... 11
    III. The Government Seeks Partial Reconsideration to Protect National Security
    Interests ............................................................................................................ 13
CONCLUSION ............................................................................................................................. 15
CERTIFICATE OF COMPLIANCE ............................................................................................ 16

# AUTHORITIES

Page(s)

## Cases

*ACLU Immigrants' Rts. Project v. ICE*,
 58 F.4th 643 (2d Cir. 2023) ................................................................................................ 6
*ACLU v. DOJ*,
 655 F.3d 1 (D.C. Cir. 2011) ........................................................................................ 7, 11
*Am. Civil Liberties Union v. DOJ*,
 750 F.3d 927 (D.C. Cir. 2014) ......................................................................................... 10
*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
 684 F.3d 36 (2d Cir. 2012) ................................................................................................ 2
*Associated Press v. DOD*,
 554 F.3d 274 (2d Cir. 2009) .............................................................................................. 8
*Broward Bulldog, Inc. v. U.S. Dep't of Just.*,
 939 F.3d 1164 (11th Cir. 2019) ......................................................................................... 9
*BuzzFeed, Inc. v. DOJ*,
 No. 17 Civ. 7949 (VSB), 2019 WL 1114864 (S.D.N.Y. Mar. 11, 2019) ......................... 11
*Dietrich v. Bauer*,
 198 F.R.D. 397 (S.D.N.Y. 2001) ....................................................................................... 3
*Jabar v. DOJ*,
 62 F.4th 44 (2d Cir. 2023) ............................................................................................... 12
*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
 729 F.3d 99 (2d Cir. 2013) ................................................................................................ 3
*Levy v. U.S. Postal Serv.*,
 567 F. Supp. 2d 162 (D.D.C. 2008) .................................................................................. 9
*Mikhaylova v. Bloomingdale's Inc.*,
 No. 19CIV8927GBDSLC, 2022 WL 17986122 (S.D.N.Y. Dec. 29, 2022) ...................... 3
*Nemaizer v. Baker*,
 793 F.2d 58 (2d Cir. 1986) ................................................................................................ 3
*New York Times v. DOJ*,
 No. 22 Civ. 1539 (JSR), 2023 WL 7305242 (S.D.N.Y. Nov. 6, 2023) ......................... 3, 5
*Rhee-Karn v. Lask*,
 No. 15CV9946 (DLC), 2020 WL 1435646 (S.D.N.Y. Mar. 24, 2020) ............................. 2
*Schrecker v. DOJ*,
 349 F.3d 657 (D.C. Cir. 2003) ......................................................................................... 10
*Sorin v. DOJ*,
 758 F. App'x 28 (2d Cir. 2018) ......................................................................................... 9

## Statutes

5 U.S.C. § 552(b)(6) .............................................................................................................. 7
5 U.S.C. § 552(b)(7)(C) ......................................................................................................... 7
5 U.S.C. § 552a(4) ................................................................................................................. 6

**Rules**

Fed. R. Civ. P. 60(b)(3)........................................................................................................... 3
Federal Rules of Civil Procedure 60(b)(1)............................................................................. 1, 3, 13

**Regulations**

32 C.F.R. §117.7(b) ............................................................................................................... 14

The government submits this brief in opposition to plaintiffs' motion, ECF No. 29 ("Pl. Mot."), seeking partial reconsideration of the Court's orders regarding disclosure, and in support of its cross-motion pursuant to Federal Rules of Civil Procedure 60(b)(1) & (b)(6). As explained below and more fully in the government's contemporaneously submitted ex parte letter, the government is also seeking partial reconsideration of the relevant orders in order to protect privacy and national security.

## PRELIMINARY STATEMENT

When the Court granted plaintiffs' motion for summary judgment and denied the government's motion, it invited the government to submit the two pages at issue for in camera review: "To the extent any detail in the document invades Musk's personal privacy beyond the issues discussed here, the defendant may propose redactions for the Court's ex parte, in camera review." ECF No. 21 at 20 ("October 8 Order"). As noted in the attached declarations, the information at issue implicates significant national security considerations. The government acknowledges that it did not raise all of these facts before, but given their importance, nevertheless respectfully requests that the Court consider them now.

In accordance with the Court's October 8 Order, the government submitted the two pages ex parte, and also filed a public, unredacted letter that both detailed proposed redactions and also argued why the first page should be deemed nonresponsive, and thus withheld. ECF No. 22 ("October 17 Letter"). Two proposals from the government's October 17 Letter are at the heart of plaintiffs' motion for reconsideration. Both rest on the distinction between security clearances themselves, and the process of investigation for those clearances. First, the government requested that the Court deem only the second page responsive, since the first page contains neither a list of clearances nor information about the extent or purview of any clearances. Second, the government

1

requested that all investigation-related information—including some on the second page, which is otherwise responsive—be withheld as exempt. October 17 Letter at 2. The Court largely approved those proposals in an order on October 20, ECF No. 23 (the "October 20 Order").[1]

The government makes two applications herein. Plaintiffs' motion for reconsideration should be denied. The Court's October 20 Order was not erroneous, and there is no other applicable basis for reconsideration. The first of the two pages at issue is not responsive to plaintiffs' FOIA request. The investigation-related information on both pages is properly protected under FOIA's privacy exemptions. And plaintiffs' other arguments for reconsideration are meritless.

Additionally, because of the national security grounds explained in the attached public declarations and the government's ex parte letter submitted herewith, the government itself seeks partial reconsideration of the Court's relevant disclosure orders.

## ARGUMENT

### I. Legal Standard

"The standard for granting a motion for reconsideration is 'strict.'" *Rhee-Karn v. Lask*, No. 15CV9946 (DLC), 2020 WL 1435646, at *1 (S.D.N.Y. Mar. 24, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Id.* Reconsideration "should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct clear

---

[1] In the October 20 Order, the Court approved the government's other proposed redactions, except Musk's date of birth and place of birth; the government later requested, and plaintiffs did not oppose, relief from the order requiring disclosure of Mr. Musk's date and place of birth, which the Court granted. ECF Nos. 25, 26. These aspects of the Order are not challenged in plaintiffs' motion for partial reconsideration.

error or prevent manifest injustice*." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citations omitted).

While Rule 60(b) may provide relief from judgment where there has been a "mistake," Fed. R. Civ. P. 60(b)(1), or "misrepresentation," Fed. R. Civ. P. 60(b)(3), the Second Circuit has instructed that Rule 60(b) affords "extraordinary judicial relief that can be granted only upon a showing of exceptional circumstances." *Mikhaylova v. Bloomingdale's Inc.*, No. 19CIV8927GBDSLC, 2022 WL 17986122, at *1 (S.D.N.Y. Dec. 29, 2022); *see also Dietrich v. Bauer*, 198 F.R.D. 397, 400 (S.D.N.Y. 2001) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Courts have found that reconsideration is warranted where, in its absence, a FOIA disclosure could harm national security or law enforcement interests. *See New York Times v. DOJ*, No. 22 Civ. 1539 (JSR), 2023 WL 7305242, at *3 (S.D.N.Y. Nov. 6, 2023).

## II.   Plaintiffs' Motion for Reconsideration Should Be Denied

### A. The Court Correctly Found that Page One Is Not Responsive

The Court correctly determined that the first page of records is nonresponsive because it contains neither a list of security clearances nor "details about the extent and purview of each of the clearances," and because it is a separate "record" for FOIA purposes. There was no error, and no basis for reconsideration.

Plaintiffs' FOIA request seeks "1) a list of security clearances for Elon Musk" and "2) Any details about the extent and purview of each of the clearances." ECF No. 1-3 at 1; Compl. ¶ 9.

As the government's October 17 letter explains, the two pages of records that defendant DCSA initially processed in this case come from two related but distinct subsystems of DoD's DISS system. The first page is a screenshot of a page from the Case Adjudication Tracking System, or CATS, "which is designed for performing adjudication functions—that is, for grants or denials

3

of clearances." ECF No. 22 at 2. As an inspection of page one reveals, that page contains information about the level of investigation conducted (a field titled "Supporting Investigation"); indicates whether an investigation was open as of the date of the record (a field titled "Open Investigation"); and contains a field titled "Investigations" with an inventory of information about any background investigations that the government conducted.[2] Page one does not contain a list of clearances.

Page two is drawn from a separate DISS subsystem, the Joint Verification System, or JVS, "which enables DoD professionals to verify eligibility determinations." ECF No. 22 at 2. Page two does contain the list of clearances. It also contains two of the same fields described in the previous paragraph ("Supporting Investigation" and "Open Investigation"), but not the "Investigations" field. It does have a separate field—for "Continuous Evaluation"—which would contain information about the government's ongoing evaluation. *See* First Watters Decl. ¶ 17.

As these descriptions make clear, page one does not contain a list of security clearances. Thus, it does not meet the first part of the Request. It could only be responsive if it contained "[a]ny details about the extent and purview of each of the clearances." ECF No. 1-3 at 1. But none of the investigation-related information on page one, or any other information on page one, meets this description.

The process by which a clearance determination was made is not information about the "extent" or "purview" of a clearance. The "extent" or "purview" of a clearance would be information about its *scope*: what information it permits its holder to access. For example, the "extent" of a clearance might include descriptions of specific types of information its holder would be permitted to access, including any limitations. *See Extent*, *Merriam-Webster.com Dictionary*,

---

[2] It appears that this field is not fully visible in the screen shot.

4

at https://www.merriam-webster.com/dictionary/extent (last visited Nov. 4, 2025) (sense 1.a, "the range over which something extends: scope," or sense 1.c, "the point, degree, or limit to which something extends"); *Purview*, *Merriam-Webster.com Dictionary*, at https://www.merriam-webster.com/dictionary/purview (last visited Nov. 24, 2025) (sense 2, "the range or limit of authority, competence, responsibility, concern, or intention"). But information about the government's investigatory process is fundamentally different: it conveys *how* the government determined what information (if any) the holder would be permitted to access, not *what* the permission was.[3]

Thus, while it is true that the government's October 17 letter did not cite part 2 of the Request (the "extent and purview" portion), the omission was not—contrary to plaintiffs' argument—"misleading." Pl. Mem. 3-5. Rather, the letter did not discuss part 2 of the Request because it is irrelevant.

The distinction between clearance determinations and the investigatory process leading to them was part of the summary judgment briefing, where plaintiffs disclaimed interest in investigatory records. *See* Pl. Br. at 22 (dismissing the Government's discussion about investigatory documents because they were not the subject of the FOIA request). Plaintiffs emphasized the limited scope of their request, cabining their interest to only the security clearances that Elon Musk held and their extent and purview. *Id.* ("This case is *not* about . . . the investigative files and information compiled when [Musk] applied for any security clearance."). Plaintiffs' position faithfully reads their own Request. It was also a strategic choice: if the Request included

---

[3] Plaintiffs' summary judgment briefing repeatedly emphasized that the request was narrow and straightforward, often omitting part 2. *See, e.g.*, Pl. Br. 1 ("This case concerns a straightforward [FOIA request]: The Times seeks a list of the security clearances granted to Elon Musk."); *accord id.* 13, 16.

5

(or could be read to include) information about the investigation process, that would raise distinct, stronger privacy concerns, as the Court recognized. ECF No. 21 at 15.

The government appreciates that plaintiffs' arguments were based on descriptions the government's papers provided. Pl. Mot. 5. Nonetheless, as noted above, both the parties and the Court were correct when characterizing the Request: it does not cover information about the investigatory process, but just the end result. And page one is not responsive to the Request.

The government also appreciates that there is an information asymmetry between the parties in this instance. Pl. Mot. 7. But contrary to plaintiffs' argument, the government did not "mislead" either plaintiffs or the Court. Pl. Mot. 7. Acting pursuant to the Court's order, the government provided the two pages for ex parte, in camera review; thus, the Court was able to verify the government's assertions. While it is true that the government's initial processing decision incorrectly determined that page one was responsive, this was an oversight, not an attempt to hide the ball. The government's papers have now provided detailed descriptions of both pages.

Finally, as the government's October 17 letter explained, the two pages are distinct "records" for FOIA purposes. FOIA itself does not contain a definition of the term "record," so DOJ guidance suggests looking to its sister statute, the Privacy Act, which does contain a definition: a "record" is a "grouping of information about an individual." 5 U.S.C. § 552a(4). *See* Office of Information Policy, "Defining a 'Record' Under the FOIA" (hereafter, "OIP Guidance"), at https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia. The Second Circuit has also interpreted FOIA's term "record" to have its "common meaning, which references information that is written, documented, or otherwise preserved in a tangible, perceivable, retrievable form," *ACLU Immigrants' Rts. Project v. ICE*, 58 F.4th 643, 652 (2d Cir. 2023), although that court did not consider the term in the context of distinguishing one record from

another.

Although the two pages at issue were both gathered from DoD's DISS system, they came from separate subsystems that serve distinct purposes: page one is a screenshot of a page from the Case Adjudication Tracking System, which is designed for performing adjudication functions—that is, for grants or denials of clearances; and page two is a screenshot of a page from the Joint Verification System, which enables DoD professionals to verify eligibility determinations. ECF No. 22 at 2. The subsystems are distinct and serve distinct purposes. Only JVS concerns the subject matter of plaintiffs' Request (the list of clearances, including their extent or purview), as discussed at length above. Thus, it is appropriate to treat the two pages as separate records for FOIA purposes, and to disclose only the responsive page—page two.

Accordingly, the Court did not err in concluding that page one was nonresponsive to the Request.

### B. The Court Correctly Determined that Investigation-Related Information Is Exempt

The investigation-related information on both pages is properly withheld pursuant to exemptions 6 and 7(C), as the Court correctly held. *See* 5 U.S.C. § 552(b)(6), (7)(C).

As the government's summary judgment briefing explains, ECF No. 12 at 5-6, FOIA's exemption 6 protects information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C), which is "more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material," *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quotation marks omitted)), covers "records or information compiled for law enforcement purposes" whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The protections of exemptions 6 and 7(C) attach when a person has a

more than de minimis privacy interest in the information requested, unless the interest is outweighed by a cognizable public interest in disclosure. *Associated Press v. DOD*, 554 F.3d 274, 286 (2d Cir. 2009).[4]

As the government's summary judgment briefing explains, the privacy interests in the underlying investigatory records are substantial. *See* First Watters Decl. ¶ 16. To be sure, the investigation-related information at issue now is not the detailed contents of the investigative file. But the information at issue includes the number and timing of certain investigations the government conducted, and the level of detail at which they were performed. Even under the reasoning of the Court's summary judgment decision, this information carries a significant privacy interest.

First, the number and timing of investigations—including occurrence of continuous evaluation—could reveal private information by revealing whether or when an investigation occurred. For example, if an investigation is opened at a certain time, it could show that DCSA received information through its continuous evaluation process that could merit further review. The government previously explained that disclosing whether DCSA had received derogatory information carries a substantial privacy interest. *See* First Watters Decl. ¶¶ 19-20.

Specifically, DCSA's website explains that under the continuous vetting process, further investigation may be triggered by numerous sources of sensitive information:

> Automated record checks pull data from criminal, terrorism, and financial databases, as well as public records, at any time during an individual's period of eligibility. When DCSA receives an alert, it assesses whether the alert is valid and worthy of further investigation. DCSA investigators and adjudicators then gather facts and make clearance determinations.

---

[4] As discussed in the government's reply brief at summary judgment, ECF No. 16 at 1-3, the records were compiled for law enforcement purposes, First Watters Decl. ¶ 10, Second Watters Decl. ¶¶ 4-9, and thus meet the exemption 7 threshold.

8

DCSA, "Continuous Vetting," at https://www.dcsa.mil/Personnel-Vetting/Continuous-Vetting/ (last visited December 2, 2025). Information from "criminal, terrorism, and financial databases" carries a substantial privacy interest. *See, e.g.*, *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1184 (11th Cir. 2019) (information related to FBI investigation of potential leads following the September 11 attacks carried substantial privacy interest); *Sorin v. DOJ*, 758 F. App'x 28, 33 (2d Cir. 2018) (summary order) (upholding agency exemption 7(C) protection of names, professional history, educational history, and financial information of potential witnesses in internal investigation records later acquired by federal government for criminal investigation). Revealing whether (and if so, when) an investigation occurred could reveal whether (and when) DCSA received sensitive information of this type about the individual. Courts recognize the substantial privacy interest in reports of conduct that law enforcement agencies may decide to investigate. *See, e.g.*, *Levy v. U.S. Postal Serv.*, 567 F. Supp. 2d 162, 167 (D.D.C. 2008) (recognizing privacy interest in, among other things, documents identifying individuals as "potential leads" in a law enforcement investigation).

Second, plaintiffs have not argued that Mr. Musk has waived through his own disclosures information about any background investigations DCSA conducted. In the October 8 opinion, the Court's analysis of the privacy interest turned critically on its view that Mr. Musk had diminished or waived his privacy interest in whether he had a security clearance. ECF No. 21 at 11-12, 18. But plaintiffs raise no claim here that Mr. Musk has waived a privacy interest about DCSA's investigation, as opposed to the result.

In sum, there is a more than de minimis privacy interest in the investigation-related information.

There is no qualifying public interest in disclosure that outweighs Mr. Musk's privacy

interest in the investigation-related information. The summary judgment opinion found two types of qualifying public interest supporting disclosure of the list of Mr. Musk's clearances. Specifically, the Court determined that (1) "the public has an interest in knowing whether the leader of SpaceX and Starlink holds the appropriate security clearances," and (2) "a public interest in understanding the thoroughness, fairness, and accuracy of government investigations and operations." ECF No. 21 at 15, 16.

The first interest—in knowing whether Mr. Musk holds clearances—is irrelevant to the investigation-related information. It would be fully satisfied by disclosure of the list of clearances.

The second interest—in understanding DCSA's operations—would already be vindicated by the Court's disclosure order given the Court's finding of waiver, and would only be minimally advanced through the further disclosure of the investigation-related information. In general, the public interest side of the balance should consider "the incremental value of the specific information being withheld," *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003), taking into account information already released, *Am. Civil Liberties Union v. DOJ*, 750 F.3d 927, 937 (D.C. Cir. 2014) (Tatel, J., concurring). The government disagrees with the Court's determination and seeks partial reconsideration as noted below and in its ex parte submission. Nonetheless, the Court has already ordered the release of the list of any clearances Mr. Musk held in September 2024, because (among other things) the Court determined that this disclosure would help the public evaluate the "thoroughness, fairness, or accuracy of security clearance determinations." ECF No. 21 at 16. Subject to the specific concerns detailed in the government's ex parte submission, the best evidence for these concerns is in the bottom-line result—the output of the DCSA's process—rather than in seeing intermediate steps. Disclosures of investigation-related information could shed light on private information, such as unsubstantiated reports or investigative leads that did

not result in any final action on Mr. Musk's clearances. Courts recognize that the public interest in unsubstantiated reports is diminished compared to final determinations. *See, e.g.*, *BuzzFeed, Inc. v. DOJ*, No. 17 Civ. 7949 (VSB), 2019 WL 1114864, at *9 (S.D.N.Y. Mar. 11, 2019) (finding diminished public interest in unsubstantiated allegations).

Finally, the balance of private and public interests supports withholding the investigation-related information. Compared to the list of clearances at issue on the parties' cross-motions for summary judgment, the privacy interest for the investigation-related information is greater, and the public interest is less. Thus, even if a qualifying public interest were meaningfully advanced by disclosure, it does not outweigh the privacy interests Mr. Musk holds in the investigation-related information. When the Court ruled on the parties' summary judgment motions, it held that the balancing test favored disclosure because Mr. Musk had "diminished" any applicable privacy interests in a list of his security clearances through his own public statements on the subject. ECF No. 21 at 18. But plaintiffs have not raised similar arguments about the investigation-related information. Given the undiminished privacy interests Mr. Musk holds in the investigation-related information, the balance favors nondisclosure. Plaintiffs have not met the high bar for reconsideration of the Court's determination that the investigation-information should be withheld as exempt.

### C. Plaintiffs' Other Arguments for Reconsideration Lack Merit

Plaintiffs have raised no other basis for reconsideration.

Contrary to plaintiffs' claims, the government's submission was not "procedurally improper." Pl. Mot. 3. As previously indicated, the Court invited the government to submit the two pages at issue, writing: "To the extent any detail in the document invades Musk's personal privacy beyond the issues discussed here, the defendant may propose redactions for the Court's ex parte, in camera review." ECF No. 21 at 20; *see also id.* at 13 ("[I]n the event that a condition or waiver

11

exists and its particular contents implicate Musk's privacy interests, then DCSA may submit the document to the Court for ex parte, in camera review of its proposed redactions."). The request for ex parte review was within the Court's discretion. *Jabar v. DOJ*, 62 F.4th 44, 53 (2d Cir. 2023). The government also filed an unredacted, public letter providing the basis for its proposed redactions, including as much detail as possible about the underlying facts in the two pages that formed the basis for its arguments, to minimize the "information asymmetry" between the parties. Pl. Mot. 7.

Nor was the government's October 17 submission "misleading." Pl. Mot. 3. Plaintiffs' contrary characterizations, Pl. Mot. 5-7, misunderstand the content of page one. But as explained in detail above—and as the Court can confirm by inspection—page one is in fact not responsive to plaintiffs' Request.

Finally, the government did not waive the bases for seeking to withhold the investigation-related information. Pl. Mot. 7. With respect to privacy, the Court invited the government to submit proposed redactions if any of the information contained in the two pages invoked more specific privacy concerns. ECF No. 21 at 13, 20. Because the parties' original dispute revolved around whether the entirety of the two pages could properly be withheld, the government's briefing did not address more detailed arguments about the specific contents of those pages. The Court was within its discretion to invite the government to make more specific arguments after rejecting its broader initial arguments. With respect to the determination of responsiveness, the Court was also within its power in the October 20 Order to permit the government to limit the disclosure to records responsive to the request, especially given the privacy concerns present on page one.

### III. The Government Seeks Partial Reconsideration to Protect National Security Interests[5]

Finally, as explained in the accompanying public declarations, and as detailed more specifically in an ex parte submission filed concurrently with this brief, given the national security interests in nondisclosure of information related to individual security clearances—including of high-level executives in industry—the government respectfully requests that the Court partially reconsider the portions of its October 8 opinion and related disclosure orders that overruled the government's assertion of privacy interests. The government is not able provide all of the factual basis for its position in a public filing, because doing so would reveal information that the government believes is properly considered exempt; therefore, we have explained that factual basis, and the precise relief sought, in an ex parte submission.

The government's previous declarations noted that the purpose of the security clearance system is to protect national security. *See* First Watters Decl. ¶¶ 4, 10, 19, Second Watters Decl. ¶¶ 4-9. If the government were required to disclose all security clearance information for individuals in response to FOIA requests, it could have serious national security implications. Some of these concerns sound in individual privacy. For example, individuals could be subjected to harassment or intimidation or improper efforts to seek unauthorized access to national security information. Second Watters Decl. ¶ 9.

---

[5] Because the government cross-moves for reconsideration, we respectfully submit that this combined, single brief—which contains arguments both in opposition to plaintiffs' motion and in support of the government's motion—should be permitted to have a maximum word count of 7000 words. The government would consent to an increase in the word limit for plaintiffs' responsive brief appropriate to both respond to the government's motion and to reply in support of their own motion. Moreover, because the government moves not pursuant to Local Rule 6.3 but pursuant to Federal Rule of Civil Procedure 60(b)(1) & (6), we respectfully submit that the Local Rule 6.3 prohibition on declarations is not applicable.

These concerns are described at greater length in the accompanying declarations of Chakeia D. Ragin and Matthew T. Kitzman. Specifically, as Mr. Ragin explains, the primary purpose of the background check system and the security clearance process "is to ensure that eligibility for access to classified information is consistent with national security." Ragin Decl. ¶ 8. DCSA does not reveal whether specific individuals hold security clearances because of "its potential use by adversaries to target clearance holders for blackmail or other efforts to gain access to national security information, thereby jeopardizing national security." Ragin Decl. ¶ 9. This posture protects both the privacy of individuals and the national security of the United States. Ragin Decl. ¶¶ 8-11. Thus, the assertion of FOIA exemptions 6 and 7(C) in the background investigation and clearance process protects both individual privacy, and also national security, since it protects "individuals from targeting and intimidation by adversaries attempting to gain unauthorized access to national security information." Ragin Decl. ¶ 14.

As Mr. Kitzman separately explains, in the context of government contractors in the national security arena, for a private company to receive a federal contract requiring access to classified information, KMP of that company must hold the appropriate personal clearance level (or PCL). Kitzman Decl. ¶ 6 (citing 32 C.F.R. §117.7(b)). Contractors themselves are generally barred from disclosing clearance-related information in marketing, and DCSA does not confirm or deny which companies—or their key management personnel—possess clearances. Kitzman Decl. ¶ 6. Moreover, disclosing the clearance level of KMP would effectively disclose the clearance level of the entities those KMP lead. Kitzman Decl. ¶ 8. This would create risks of cyber attacks or other attempts to steal information, and could endanger the life or safety of cleared individuals. Kitzman Decl. ¶ 8.

14

For these reasons—and as set out in more specificity in the government's ex parte submission filed today—we respectfully submit that the Court should partially reconsider the October 8 opinion and related disclosure orders, as set forth in the ex parte submission.

## CONCLUSION

Plaintiffs' motion for partial reconsideration should be denied, and the Government's cross-motion pursuant to Rule 60(b) should be granted.

Dated: December 8, 2025
      New York, New York

                                             Respectfully submitted,

                                             JAY CLAYTON
                                             United States Attorney
                                             Southern District of New York

By:    */s/ Sean S. Buckley*
        SEAN S. BUCKLEY
        Deputy United States Attorney
        PETER ARONOFF
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, New York 10007
        Telephone: (212) 637-2697
        E-mail: peter.aronoff@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I, Peter Aronoff, counsel of record for defendant, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Local Rule 7.1(c) allows to be excluded in preparing the following word count. I further certify that this brief contains 4337 words.

By:     */s/ Peter Aronoff*
        Peter Aronoff
        Assistant United States Attorney