UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK TIMES COMPANY and
NEIL BEDI,

                                   Plaintiff,

           - versus –

DEFENSE COUNTERINTELLIGENCE
AND SECURITY AGENCY,

                                 Defendant.

No. 25 Civ. 2333 (DLC)

---

### DECLARATION OF MATTHEW T. KITZMAN

      Pursuant to 28 U.S.C. § 1746, I, Matthew T. Kitzman, hereby declare the following to be true and correct to the best of my knowledge:

      1.     Since January 2025, I have served as the Deputy Associate Director of the Office of Entity Vetting within the Industrial Security (IS) Component, Defense Counterintelligence and Security Agency (DCSA). In this capacity, I monitor and advise staff assigned to the Office, and those staff (a) process private industry organizations for Facility Clearances; (b) monitor continued eligibility in the National Industrial Security Program (NISP); (c) develop strategies to address risks and optimize classified contract performance, and provide decision makers with a comprehensive understanding of business and security related vulnerabilities to promote delivery of quality products and services to the Federal government.

      2.     This declaration is submitted in my official capacity to support Defendant's Motion for Reconsideration in the above captioned matter. The statements in this declaration are based upon my personal knowledge and upon my review of information available and accessed in performance of my

assigned duties.

## ENTITY VETTING

3. IS oversees the protection of classified U.S. Government and foreign government information, technologies and material entrusted to cleared industry. With this responsibility, IS operates the NISP on behalf of the Department of War and 35 other federal agencies.

4. As part of administrating the NISP, the Office of Entity Vetting oversees the implementation and compliance of applicable Federal regulations and the NISP Operating Manual (NISPOM) required security controls and procedures to protect classified information exchanged between the Federal government and cleared entities within the NISP. Vetting involves reviewing a number of factors before a specific company, within private industry, is determined to be eligible for access to classified information. These factors include a review of the company's business structure, its security program, and confirmation that certain key management personnel (KMP) are eligible to maintain and to possess personnel clearances (PCLs) at the same level of the entity.

5. DCSA is responsible for the oversight of approximately 10,000 cleared companies and 13,000 cleared facilities.

## ESTABLISHING A PRECEDENT FOR RELEASE OF CLEARANCE INFORMATION COULD HAVE A CHILLING EFFECT ON DCSA INVESTIGATIONS

6. Under applicable provisions in the NISPOM, as codified in Federal regulation, for a private company to receive a federal contract requiring access to classified information, KMP of that company must hold the appropriate PCL. See 32 C.F.R. §117.7(b). The KMP are an entity's senior management official, facility security officer, insider threat program senior official and all other entity officials who either hold a majority interest or stock in, or have direct or indirect authority to influence or decide issues affecting the management or operations of, the entity or classified contract

performance. While the level of clearance held by the CEO or other high-level executives of a company may be speculated on by the public because of facility clearance requirements being published in the Code of Federal Regulations, 32 CFR §117.9(a)(9) prohibits a company from disclosing or using its favorable entity eligibility determination for advertising or promotional purposes. Therefore, DCSA cannot confirm or deny which companies require a clearance, what clearance level has been issued to a particular company, or the specific identities of the KMP within a specific company. In fact, if a cleared entity is found to have promoted or advertised its eligibility determination, IS will reflect non-compliance with the NISPOM and treat the disclosure as a vulnerability that may affect the company's clearance status.

7.  Any finding that a significant public interest exists in the clearance status of the private citizen owners, or corporate management, of cleared companies may create a chilling effect on the willingness of these companies, and other facilities, to contract with the United States Government, thereby decreasing the United States' ability to acquire goods and services, including the latest technology, to keep pace and to effectively counter adversaries. Worse yet, those companies could decide to contract with our adversaries, based in-part, because those adversaries and foreign nations enforce more stringent privacy and non-disclosure policies.

8.  Furthermore, the disclosure of the clearance status levels of those KMP at a given company potentially exposes the clearance level of the company itself. Specifically in this case, sharing the personal clearance information for Elon Musk would also expose the facility clearance level assigned to Mr. Musk's companies and other KMPs assigned in positions of authority over those companies or classified contract performance. DCSA-IS will only share information regarding the FCL level of a cleared company outside of the agency with another cleared company where both companies have a contractual relationship and sharing of that information is in service to meeting a

contract with the U.S. government. Other than in those specific industry instances, DCSA-IS does not publicly disclose, and specifically does not confirm or deny, whether a particular company requires a facility clearance and does not identify the level of clearance issued to that company consistent with release exemptions set forth in the Freedom of Information Act. The clearance status and related access eligibility levels constitute internal Federal government information for the benefit of the United States which are the product of internal government investigative protocols and procedures. Publicizing this information could reasonably (a) jeopardize national security; (b) produce foreseeable harm by increasing the risk of theft, exploitation, and cyber-attacks to these companies and facilities; and (c) endanger the life, welfare or physical safety of KMPs by bad actors and adversaries of the United States.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
MATTHEW KITZMAN

Executed on this 8th day of December, 2025