UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK TIMES COMPANY and
NEIL BEDI,

                                          Plaintiff,

- versus –

DEFENSE COUNTERINTELLIGENCE
AND SECURITY AGENCY,

                                          Defendant.

No. 25 Civ. 2333 (DLC)

---

## DECLARATION OF CHAKEIA D. RAGIN

Pursuant to 28 U.S.C. § 1746, I, Chakeia D. Ragin, hereby declare the following to be true and correct to the best of my knowledge:

1. Since October 2025, I have served as the Deputy Associate Director of the Trust Decision (Adjudication) Directorate, Defense Counterintelligence and Security Agency (DCSA). In this capacity, I monitor and advise staff assigned to the Directorate and serve as a subject matter expert, based upon experience and service, pertaining to the various steps in the individual clearance, investigative, and adjudicative and continuous vetting process.

2. This declaration is submitted in my official capacity to support Defendant's Motion for Reconsideration in the above captioned matter. The statements in this declaration are based upon (a) my personal knowledge and experience pertaining to individual clearance eligibility and eligibility access processes; and (b) my review of information available and reviewed in performance of my assigned duties over the course of over thirty years of Federal government service, including support to the national security enterprise.

1

## PERSONNEL SECURITY REVIEW, INVESTIGATIVE, AND CLEARANCE PROCESS

3. To protect the welfare of the American people and to strategically advance national security objectives, all individual employees of the United States government or contractor personnel who provide specific goods or services to the Federal government, must be reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States. Depending upon contemplated assignment to national security positions or performance of duties and support related to national security, Federal government civilian employees, contractors, and military members may undergo a background investigation to make such a determination. The extent of the investigation and adjudication will depend on the type of position, the nature of the support being delivered, and the degree of harm the person in that position or support role could reasonably cause. Even if a position or role does not require eligibility for access to national security information, an inquiry into an individual's suitability for employment or appointment to certain Federal government positions or for performance of specific duties may be necessary [i.e., a suitability determination].

4. The term security clearance is not expressly defined in statute or regulation. Instead, the security clearance [and its corresponding level] is the product of internal government processes and procedures and serves as a categorization tool and gatekeeping mechanism which the Federal government uses to protect national security interests and to readily identify individuals who are eligible for access to certain types of classified or sensitive information.

5. An individual may not obtain or initiate a security clearance on his or her own. Instead, only a sponsoring agency may initiate the personnel security review, investigative and security clearance process. That internal Federal government process is for the unique benefit of the government and in furtherance of national security [i.e., protecting sensitive or classified information

from disclosure to adversaries or those who wish to harm the interests of the United States], not necessarily for the benefit of the individual. For an individual to be granted access to classified information, that individual must secure a favorable eligibility determination, possess a demonstrated need to know, and sign a non-disclosure form.

6. Department of Defense Manual 5200.02, "*Procedures for the DoD Personnel Security Program (PSP)*," dated April 3, 2017, and as amended, and Department of Defense Directive 5220.6, "*Defense Industrial Personnel Security Clearance Review Program*," dated January 2, 1992, and as amended, assign responsibilities and prescribe procedures for investigations of individuals, for determining national security eligibility access determinations and for undertaking personnel security actions. Under both issuances, a determination to grant or continue national security eligibility depends on whether access for an individual is clearly consistent with the national interest. Similarly, decisions to deny, suspend or revoke access to classified information are dependent on a determination of whether such access is consistent with national security.

7. As part of determining an individual's ability to access classified information, and consistent with the above referenced issuances, the personnel security review and security clearance process involve a number of stages, including (a) pre-investigation (i.e., an agency's determination that an employee or contractor personnel requires access to classified information to complete duties); (b) investigation (i.e., collection and examination of information and variables which comprise an individual's background information, ensuring review of a sufficient period of that individual's life); (c) adjudication (i.e., an evaluation and determination whether to grant an individual access eligibility to classified information); and (d) reinvestigation and continuous vetting (i.e., automated records checks to detect potential security issues in an individual's background). Each case is judged on its own merits, and any doubt as to whether access to classified information is clearly consistent with

national security is resolved in favor of national security.

8. While individuals have a privacy interest in the information collected, processed, and evaluated during the investigation, adjudication, continuous vetting processes, the primary purpose of these processes and procedures is to ensure that eligibility for access to classified information is consistent with national security.

## DCSA'S POLICY TO DENY RELEASE OF SECURITY CLEARANCE INFORMATION TO THE PUBLIC IS ESSENTIAL TO NATIONAL SECURITY

9. It is the policy of DCSA to deny requests for the release of security clearance information to third parties due to the sensitivity of that information and its potential use by adversaries to target clearance holders for blackmail or other efforts to gain access to national security information, thereby jeopardizing national security.

10. DCSA maintains clearance information in the Defense Information System for Security (DISS) which is the record system for personnel security, suitability, and credential management of all Department of War ("DOW") employees, military personnel, and DOW industrial contractors. The records in DISS are covered by the Privacy Act of 1974 and maintained pursuant to the DUSDI 02-DoD, Personnel Vetting System of Records Notice. DCSA is required to maintain an accurate database of security clearance information to ensure compliance with and enforcement of both DOW guidance and executive orders that govern national security information, including Executive Order 12,968, *Access to Classified Information*, and Executive Order 10,865, *Safeguarding Classified Information Within Industry*. Additionally, DoD Manual 5200.02, "*Procedures for the DoD Personnel Security Program,*" and DoD Directive 5220.6, "*Defense Industrial Personnel Security Clearance Review Program*". DISS enables DCSA and other Federal agencies to securely communicate information about the clearances an individual possesses so that national security

information owners, across the Federal government, can validate whether an individual has the appropriate clearance level before granting access to sensitive and/or classified Federal government information.

11.     These efforts to securely maintain and communicate information about clearance holders would be severely undermined if the status of individual clearance holders was released to the public thereby impacting the safety of those individuals and national security.

**ESTABLISHING A PRECEDENT FOR RELEASE OF CLEARANCE INFORMATION COULD HAVE A CHILLING EFFECT ON DCSA INVESTIGATIONS**

12.     At a high level, the ability (or inability) to obtain clearances reflects the government's judgment of an applicant's reliability and trustworthiness to possess and maintain access to national security information.  Adjudications are based on deeply personal information.  Revealing the exact nature of the eligibility access and whether the DCSA granted or denied clearances (or granted them with conditions or a waiver) would shed light on this private information, would invite speculation about the more detailed contents of the DCSA's investigation, would potentially create foreseeable harm to internal processes and to the individuals whose eligibility access is disclosed.

13.     Furthermore, the Privacy Act of 1974, 5 U.S.C. § 552a, prescribes, statutorily, a method by which an individual can waive his or her privacy interests in the records authorizing the release of his or her information, by an agency maintaining that information to a third-party. The relevant section provides that "[n]o agency shall disclose any record which is contained in a [Privacy Act] system of records by any means . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. §552a(b).

14.     In addition, DoD Directive 5220.6, *Defense Industrial Personnel Security Clearance Review Program*, discussed above, implements Executive Orders 12968 and 10865 within the DCSA,

including the administrative proceedings related to eligibility determinations. Under FOIA exemption (b)(7), "law enforcement purposes" includes civil, criminal, and duly authorized administrative proceedings such as those related to eligibility determinations. Therefore, DISS records are compiled for law enforcement purposes as well as in the furtherance of national security. Also, in accordance with E.O. 12968, Section 1.2, to access classified information, or be assigned to duties that have been designated National Security Sensitive, an individual must have a favorable eligibility determination at the level required for access, a demonstrated need-to-know, and have signed nondisclosure agreement. To comply with this mandate, the information owner validates the need-to-know, while the role of determining eligibility for access rests under the authority of DCSA, for DoD-affiliated individuals. DCSA records eligibility determinations in DISS, and information owners must verify an individual's eligibility in DISS before granting access. DISS is the authoritative source of information regarding an individual's security clearance status. DCSA categorically denies the release of security clearance information to the public due to the privacy interest in these law enforcement and national security records, which protect individuals from targeting and intimidation by adversaries attempting to gain unauthorized access to national security information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

CHAKEIA RAGIN

Executed on this 8th day of December, 2025